FILED
IN CLERKS OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
2005 FEB -4 P 3: 50

05 cv 10234 RWZ

U.S. DISTRICT COURT
DISTRICT OF MASS.

JOSEPH TETI,               )
    Petitioner             )
                           )
    v.                     )        C.A. #
                           )
KATHLEEN DENNEHY           )
    Respondent             )

## PETITIONER'S MEMORANDUM IN SUPPORT OF HIS PETITION PURSUANT TO 28 U.S.C. SEC. 2254

### Prior Proceedings

On May 18, 1998, a Suffolk county grand jury indicted the petitioner, Joseph Teti, charging him with trafficking in cocaine (Indictment #98-10755) (R-1).  The Commonwealth alleged that Teti sold cocaine to an undercover officer on two separate occasions in 1996.  On May 19, 1998, the court dismissed the indictment. (R-3).  The Commonwealth re-indicted Teti on November 18, 1998, almost two and a half years after the alleged transaction. (R-3).  Teti's trial counsel did not file a Motion to Sever each of the indictments, nor did he file a Motion to Suppress the drugs.

1

Both the federal government and the Middlesex District Attorney's Office declined to prosecute. In November of 1998, almost two and a half years after the alleged transactions, the case agent successfully convinced the Massachusetts Attorney General's Criminal Division to prosecute.

Attorney Brad Keene originally represented Teti. (R-4). Attorney McBride filed his appearance in January 1999. (R-5). Both Attorney McBride and Attorney Keene represented Teti at trial. (R-6). On day three of trial, the Trial Court was informed for the first time through the assistant Attorney General that Attorney Keene, one of Teti's trial attorney's, represented the informant, Leo Lobello, simultaneously with his representation of Teti. (Tr. 3:26). Neither Attorney Keene nor Attorney McBride advised Teti of his rights to conflict free counsel. (R-86). Teti did not confer with any independent attorney as to his rights to conflict free counsel. (R-86). On April 19, 1999, the jury found Teti guilty. (R-6). The Court sentenced Teti to not more than 15 years and one day and not less than 15 years at MCI Cedar Junction. (R-6).

On November 19, 2001, Teti filed a Motion for a New Trial pursuant to Mass. Rules Crim. P 30 (b) claiming that his rights to due process and a fair trial and his right to

2

the effective assistance of counsel were violated where his trial attorneys had an actual conflict of interest. (R-15-18) Specifically, Teti claimed that one of his trial attorneys, Bradford Keene, represented both Teti and the informant against Teti, LeBello, during Teti's trial, and that Keene had not disclosed the conflict to Teti. In addition, Teti claimed his right to due process and the effective assistance of counsel were violated when the court conducted a conflict colloquy of Teti without appointing Teti conflict free counsel to advise him of his options.

The Superior Court denied Teti's motion without an evidentiary hearing. (R-87). Specifically, the Superior Court made findings on the conflict issue that are in direct contradiction with its rulings at trial as to the existence of a conflict. (R-87). In addition, on the ineffective assistance of counsel issue, the Superior Court found, absent any affidavit from attorney McBride, that McBride's decisions were all strategic and necessary to an entrapment defense, and that McBride may have failed to call the experts because Teti could not afford to pay them. The Court's findings are not supported by the record, and is in direct conflict with M.G.L. Ch. 261 § 27 A-G, which authorizes funds to pay expenses for experts where the

defendant cannot afford the expert, is represented by private counsel, and the expert is necessary to the defense. (R-87).

On September 20, 2002, Teti filed a Motion for Reconsideration. (R-103). In addition, Teti filed a Motion to Stay his direct appeal pending a decision on his Motion for Reconsideration. On September 30, 2002, the Massachusetts Supreme Court denied Teti's Motion and Ordered Teti to file his appellate brief and record appendix. On October 8, 2002, the Court denied Teti's Motion for Reconsideration. Teti filed a Motion to Consolidate his Appeal from his Rule 30 Motion for a New Trial and the denial of his Motion for Reconsideration together with his direct appeal. The Supreme Judicial Court allowed his Motion for Consolidation on October 28, 2002. (R-131). Teti consolidated his direct appeal with his appeal from the trial Court's denial of his Motion for a New Trial and Motion for Reconsideration. On January 6, 2004 the Massachusetts Appeals Court affirmed Teti's conviction. Teti filed an Application for Further Appellate Review. In his AFOR Teti attached a finding from Bar Counsel in Massachusetts recommending suspension or disbarment for Attorney McBride. On February 4, 2004, the Massachusetts Supreme Judicial Court denied Teti's

4

application. Teti now seeks relief pursuant to 28 U.S.C. sec. 2254.

## STATEMENT OF THE FACTS

### EVENTS LEADING TO THE DISCLOSURE OF THE CONFLICT

On the third day of a four-day trial, the assistant attorney general Lori S. Paris informed the Court of what she deemed "a potential conflict of interest." (Tr. 3:7). Attorney Paris was investigating how Attorney McBride came into possession of a federal pre-sentence report for the informant, Leo LoBello. Attorney McBride turned over a portion of this report to Attorney Paris on the second day of trial. Attorney Paris claimed that the document was privileged and would only be available to LoBello, his attorney, the Assistant United States Attorney, the United States Probation Office and the Federal Court. (Tr. 3:8). Attorney Paris reported to the Court, that after receiving LoBello's pre-sentence report from Attorney McBride, she contacted the United States Attorney's Office to find out the status of LoBello's case. (Tr. 3:4-8). Attorney Paris contacted an attorney by the name of Maberg whom she believed represented LoBello on the federal case. Attorney Maberg arranged a conference call for Attorney Paris to speak with LoBello's mother; Marie LoBello and brother; Leonard LeBello. (Tr. 3:4-5). During the conference call

5

Attorney Paris learned that Marie LoBello paid Attorney
Keane $ 2,000.00 to represent Leo LoBello on a Rule 35
motion in federal court to request that the Federal Court
consider reducing Leo LoBello's federal sentence due to his
extensive cooperation with the federal government. (Tr.
3:5). One of the cases upon which Leo LoBello cooperated
was the Teti case. (Tr. 3:4). Attorney Paris also learned
that Leo LoBello's previous attorney, Attorney William
Keating, had turned over Leo LoBello's entire file to Marie
LoBello, at Leo LoBello's request. (Tr. 3:5). Marie
LoBello, delivered Leo LoBello's file to Attorney Keane at
some unspecified time prior to the Teti trial. (Tr. 3:5).
The LoBello file included Leo LoBello's pre sentencing
report. In addition, Attorney Paris reported that Attorney
Keane also represented Leo LoBello's brother, (Leonard)
Tony LoBello in the Framingham District Court. (Tr. 3:12).
Attorney Keane scheduled a jury trial for Tony LoBello's
case on April 30, 1999, approximately two weeks after the
Teti trial. (Tr. 3: 12).

Attorney McBride represented to the Court and the
Court found, at trial, that Attorney Keane was co-counsel
with Attorney McBride for Teti. (Tr. 3:15). Attorney Keane
represented Teti alone from indictment in May 1998 through

6

trial, when Attorney McBride joined Keane and they together
represented Teti. (Tr. 3:15).

## FINDINGS AT TRIAL ON THE CONFLICT ISSUE:

After the Assistant Attorney General, Lori Paris,
informed the Court that Attorney Keane had represented the
informant against Teti, Leo LoBello, the Court made an
immediate inquiry of Attorney Keane. Keane admitted that
he did in fact take money from Leo LoBello's family and
generate a receipt indicating his $ 2,000.00 fee was for
post conviction work on a Rule 35[1]. (Tr. 3:26). Keane also
admitted that he received LoBello's entire file, including
his federal pre-sentence report from Attorney Keating.
(Tr. 3:26-27). The Court then commented to Keane: "...my
primary concern right now is whether there is a conflict
that infects this trial in such a way that Mr. Teti cannot
have a fair trail because of your prior representation of
Mr. LeBello, which you didn't tell anyone about." (Tr.
3:28). Keane swore that he did not tell Attorney McBride
about the conflict or share any information from LoBello's
file with McBride. (Tr. 3:28). Attorney McBride claimed he

---

[1] A Rule 35 Motion in the Federal Court seeks a further sentence
reduction for a defendant in exchange for that defendant's "substantial
assistance" to the government. A Rule 35 Motion is required to be
filed within one year of the imposition of the federal sentence.
Federal R. Crim P. 35.

got LoBello's pre-sentence report from "other sources" he refused to name[2]. (Tr. 3:29). The Court did not inquire further but stated on the record: "Well Mr. McBride, the problem is that there is an obvious conflict." (Tr. 3:29). Attorney McBride agreed that Attorney Keane's actions caused an actual conflict. (Tr. 3:29).

Attorney Paris addressed the Court indicating that a colloquy was necessary to determine if the defendant would waive any potential conflict. (Tr. 3:34). The Court again, unequivocally, informed the Commonwealth: "I don't think it's a potential conflict, I think it's a real conflict. (Tr. 3:34). The Court went on to tell the parties: "On the facts we've got, it's a conflict." (Tr. 3:34). The Court explained to the parties the reason why these facts create such an obvious conflict is because the defense is calling LoBello to discredit him, to undercut the Commonwealth's case. (Tr. 3:35). "So it's not the situation where both defense counsel represent somebody with the same interest. It's not the same interest; and Mr. LoBello has a great interest in providing testimony that is adverse to Mr. Teti, because maybe he will get some benefit on his federal sentence for that." (Tr. 3:35).

---

[2] Neither Attorney Keane nor Attorney McBride was placed under oath to answer questions about the conflict.

Attorney McBride then informed the Court, "I agree with the court when the court says it's a real conflict. I think it's a conflict that can't be waived...I don't think a colloquy with the defendant, based upon all the conflict cases that I know, can cure the problem we have here. I'm moving for a mistrial. I would like the court to inquire of my client also right now about what his feeling are, because I think, as I talked to him just briefly, having just found this out, the fact of the matter is that he's of the same mindset as I am. He's surprised, he's shocked, and this is a problem. If I knew about this, I would have put all this on the record ahead of time." (Tr. 3:39).

At sidebar, the Court informed the parties, "Well, I think there are some problems with this case, and there are going to be some issues on appeal here. I don't know whether we can clean this case up well enough because of this conflict. I think this is outrageous, what Mr. Keane did. This is absolutely outrageous." (Tr. 3:44). The Court informed the parties that even if the Court believed that Attorney Keane did not know who the informant was, he could not waive the conflict. "It's not his decision to make. He has got to consult with his clients about that. So, there are some real problems with this case."(Tr. 3:44). Then the Court commented to Attorney Paris: "this

9

is on the colloquy - - . . . It is so apparent that Mr.
Keane represented both Mr. LoBello and Mr. Teti at the same
time.  He had access to confidential information about both
of them.  Mr. LoBello is being presented as a witness who
is trying to undercut - - who Mr. McBride would like to
have him undercut the Commonwealth's case.  He is not a
friendly witness to Mr. Teti.  There is just no way - - it
is an unwaivable conflict". (Tr. 3:47).  The question is
where there has been information shared in such a way that
would completely damage his ability to have a fair trial.
The only issue now is whether there has been any
information transmitted from Mr. Keane that would really
impair Mr. Teti's right to a fair trial.  He's out - - Mr.
Keane is gone." (Tr. 3:48).

In addressing Attorney Keane, the Court made the
following comment: "Mr. Keane, I don't think there is any
doubt in the world that there is a substantial conflict
here - - that you have a conflict.  So, I'm going to ask
you to withdraw from the case." ( Tr. 3:51).  "The only
issue now is whether that conflict - - your representation
of these two people . . . I don't even think it matters
that it was at the same time . . . but at least there was
some overlap there . . . has interfered substantially with
Mr. Teti's right to a fair trial." (Tr. 3:51).  Still

addressing Attorney Keane, the Court cautioned: ". . . you knew that you had represented both of these people, that Mr. LoBello was being brought up here for this trial to try to undercut the government's case, and that his testimony was going to be - - Mr. McBride was going to try to make him look as bad as he could; and furthermore, that whatever testimony that he could give that was favorable to Mr. Teti's conviction might help him in his federal case, in getting relief from sentencing. There is this flat-out conflict here." (Tr. 3:52).

## CONTRADICTORY FINDINGS ON THE MOTION FOR A NEW TRIAL

Represented by new counsel on appeal, Teti was informed of his right to conflict free counsel by an independent, conflict free attorney. Teti filed a Motion for a New Trial requesting an evidentiary hearing to explore the conflict issue and to preserve the record for this Court on the issue of conflict. The trial judge denied Teti's motion without holding an evidentiary hearing claiming for the first time, that there was no actual conflict in Keene's representation of both Teti and LoBello. Specifically, the Court wrote:

"Teti avers that Keene has an actual conflict by "contemporaneously" representing LoBello, in the past, and Teti, at the time of trial. The inference Teti wishes the court to make is this: Keene had a duty of loyalty to help his government informant client get a better sentence and

11

prison location, well-accomplished by his testimony seeking a conviction of an alleged drug dealer (Teti). This he says would conflict with Keene's duty to him against conviction, and for an aggressive examination of witnesses.

The Court went on to say that:

"Teti does not substantiate his assertion that Keene simultaneously represented LoBello and Teti. Teti does not provide any evidence by affidavit or otherwise that Keene was still representing LoBello at the time of Teti's trial—or even that he was representing LoBello a year before trial. There is no evidence that Keene even knew LoBello was the confidential informant in the Teti trial until a week before the trial. Under the circumstances, Keene had no continuing duty to LoBello and Teti has not shown an actual conflict to warrant an evidentiary hearing on or the grant of his motion. See, Commonwealth v. Patterson, 432 Mass. 767, 776 n.9 (2000) (where the record does not indicate whether alleged dual representation was still on going as of the defendant's trial, defendant has not met his burden of "detailing character of the alleged conflict"). (R-).

## The Evidence At Trial

### LoBello's Trap

Leonard "Leo" LoBello, a convicted drug dealer from Natick, Massachusetts, and a long time friend of Teti, preyed upon his friendship with Teti by soliciting Teti's help in arranging for the purchase of cocaine from Teti on two separate occasions. (Tr. 2:12). The ruse LoBello used was that his "friend's" (Agent Deigan) wife was very ill and his friend needed money quickly to assist his ailing wife. (Tr. 2:251, 4:34). LoBello knew that Teti was an addict and used Teti's addiction to further his plan. Teti initially resisted LoBello's requests. (Tr. 3:256, 4:34).

LoBello began his campaign of solicitation by barraging
Teti at home and work with requests for assistance.
LoBello left messages with Teti's roommate, his family and
others requesting Teti's assistance. (Tr. 3:151).
LoBello's efforts paid off when Teti relented and agreed to
be the middleman by inquiring about a large-scale purchase
of cocaine through Teti's individual supplier. (Tr. 4:34).

Leo LoBello needed to produce large-scale drug
purchases to justify his claims to the federal government
that his assistance would be beneficial to them. LoBello
became an informant for the federal government some time
before he solicited Teti's assistance, and after he was
arrested by federal marshals for selling crack cocaine to
Agent Deignan. (Tr. 2:13). LoBello's federal indictment
carried a mandatory minimum 10-year prison term. LoBello
became an informant for the DEA -hoping his cooperation
would assist him in reducing his sentence. (Tr. 2:29-30).
LoBello eventually pled guilty to his drug charges in
federal court and was initially sentenced to seventy-two
(72) months in jail, approximately 60% of what he would
have received without cooperation. At the time of Teti's
trial, LoBello had a Rule 35 Motion pending for further
reduction of his sentence. (Tr. 2:29-30).

Agent Deignan's Testimony

13

Matthew M. Deignan, a special agent for the United States Drug Enforcement Administration, testified that on June 5, 1996, he was investigating a cocaine distribution with a "cooperating individual," and Mr. Teti. (Tr. 2:11). The cooperating individual (informant) was Leonard LoBello. (Tr. 2:12). Agent Deignan told the jury that LoBello began cooperating with him after LoBello's arrest on distribution of cocaine charges. (Tr. 2:13). Agent Deignan testified that LoBello was a street to a mid-level dealer. (Tr. 2:30).

Agent Deignan said that on June 5, 1996, he instructed LoBello to call Teti's house. (Tr. 2:33-34). Agent Deignan instructed LoBello to ask Teti to get him four and a half ounces of cocaine. (Tr. 2:40). Agent Deignan said that he then instructed LoBello to cancel the deal for that day because the purpose of the deal was to identify Teti's source of supply. (Tr. 2:42).

Agent Deignan testified that on June 6, 1996, He instructed LoBello to call Teti at his house and arrange a meeting. The June 6th buy took place in Agent Deignan's car. (Tr. 2:48). This buy was recorded by audio and video. (Tr. 2:55).

Agent Deignan testified that he attempted to phone Teti on September 22 and again on the 23rd. (Tr. 2:62). On

14

September 23, 1996, he made arrangements with Teti to meet him and purchase 4.5-ounce package of cocaine. (Tr. 3:64). This conversation was recorded. (Tr. 2:66). This meeting was audio and video recorded. (Tr. 2:68). Agent Deignan testified that Teti handed him two plastic bags with white powder, both wrapped in plastic bags. (Tr. 2:102).

Agent Deignan told the jury that Teti also conducted two additional drug transactions, one in October of 1996, and another in May of 1997. (Tr. 2:127-128). Teti was not charged with either of these transactions.

## Teti's Testimony

Joseph Teti testified that Leo LoBello called him numerous times at both home and work looking for cocaine. (Tr. 4:34). LoBello left messages with Teti's family members and friends requesting his assistance. (Tr. 4:32). In an effort to get Teti to conduct the transaction, LoBello told Teti that his friend's wife was very sick and that his friend needed some extra money. Teti finally agreed to get cocaine to help out his friend. (Tr. 4:34).

Teti told the jury that in addition to LoBello's constant contact requesting his assistance, Agent Deignan pressured Teti into cooperating. In fact Deigan went to his house at least three times; one time because Teti did not return his phone calls. (Tr. 4:40). Teti told the

15

jury that towards the end, he did not return Agent
Deignan's phone calls or answer his phone because he wanted
to get out of the whole thing.  (Tr. 4:41).  Agent Deignan
would call Teti's house and leave messages all day long.
(Tr. 4:41).  This went on for about a week, until Agent
Deignan finally showed up at Teti's house insisting that
Teti help him.  (Tr. 4:42).

Teti told the jury that on two occasions, June 6, 1996 and
September 23, 1996, he provided cocaine to Agent Deignan.
(Tr. 4:38).

ARGUMENT

I.  TETI IS ENTITLED TO DE NOVO REVIEW

A. THE STATE COURT'S DECISION DENYING TETI RELIEF
ON CLAIMS INVOLVING THE INEFFECTIVE ASSISTANCE
OF COUNSEL, CONFLICT OF INTEREST AND
INCONSISTENT CONCLUSIONS, SHOULD BE REVIEWED DE
NOVO BECAUSE THERE WAS NO ADJUDICATION ON THE
MERITS OF CLEMENTS'S FEDERAL CLAIMS.

In order for the "presumption of correctness" to
apply, a state court decision must:

(1)  be the product of a fair state court
"adjudication" of the federal legal issue;

(2)  be the product of a full state court
adjudication in that it addresses not only the
claim but also the issues of federal law; and

(3)  have resulted in a decision.

The state court decision is not entitled to any presumption or consideration if the state's adjudication was distorted by mistake, or completely disregarded Supreme Court case law. See e.g., Hameen v. Delaware, 2000 WL 631249, at 21-22 (3d Cir. May 17, 2000)(state court's decision was not adjudication on merits because analysis was distorted by mistaken view that the Supreme Court had already rejected identical argument.); Hogan v. Gibson, 197 F.3d 1297, 1302 n.2 1305-6 (10th Cir. 1999)(Oklahoma state court's analysis of jury instruction claim under Beck v. Alabama, 447 U.S. 625 (1980), constituted such "gross deviation from, and disregard for, the Court's rule in Beck that it cannot constitute "adjudication of Hogan's Beck claim on the merits." Since the state court did not decide the claim on its merits, we review the district court's conclusion of law de novo and factual finding, if any for clear error.").

As such, if the state court's decision is not a fair "adjudication" the federal court is free to review state court's legal decisions de novo. Miller v. Johnson, 200 F.3d 274, 281 n.4 (5th Cir. 2000). The Supreme Court specifically addressed this issue, and held that the limitation of review in AEDPA cases pursuant to 28 U.S.C. sec. 2254(d)(1) applies only to issues that have been "adjudicated on the merits in state court and review is de

novo when there has been no clear adjudication on the merits." Id.

In the Fifth Circuit, the Miller, court set out three factors to consider when evaluating whether the state decision is a true "adjudication" on the merits of petitioners claim: (1) review what state courts have done in similar cases; (2) consider whether the case history suggests that the state court's recognized any ground for not resolving the case on the merit; and (3) consider whether the state court's opinion suggests reliance on procedural grounds rather than adjudication on the merits. The Supreme Court adopted the Miller factors in Jackson v. Johnson, by denying a certiorari petition by the government after the federal court concluded, using the Miller factors that the state court decision was not an adjudication entitled to any deference pursuant to 28 U.S.C. sec 2254 (d)(1). Jackson v. Johnson, 194 F.3d 641, 651 (5th Cir. 1999) cert. denied 120 S.Ct. 1437 (2000).

Here, because the state court failed to address Teti's federal claims of constitutional violations regarding conflict of interest, ineffective assistance of counsel and the trial judge's unsupported finding on his motion for a new trial, there was no adjudication on the merits of this

18

claim as defined by 18 U.S.C. sec. 2254(d)(1). As such, this court should review these legal claims de novo.

GROUND ONE: TETI'S RIGHTS PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUION WERE VIOLATED WHERE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN HIS CRIMINAL CASE.

The Sixth Amendment guarantees a criminal defendant "the assistance of counsel for his defense. U.S. Contst. Amend. VI. The Supreme Court has repeatedly recognized that '[t]he right of an accused to counsel is beyond question a fundamental right." Kimmelman v. Morrison, 477 U.S. 365, 377 (1986). Lawyers are essential to person's accused of crimes "because they are the means through which the other rights of the person on trial are secured." United States v. Cronic, 466 U.S. 648, 63 (1984). The Supreme Court has often emphasized the significance of counsel to criminal defendants. More than 65 years ago, the Supreme Court declared:

"Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with a crime, he is incapable, generally of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel ,he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he had a perfect one. He requires a guiding hand of counsel at every step in the proceedings against him. Without it. Though he be not guilty, he faces

the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate or those of feeble intellect." Powell v. Alabama, 278 U.S. 45, 69 (1932).

The Sixth Amendment does not merely guarantee counsel to persons charged with serious crimes, it requires the effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984) the Supreme Court resolved an extended judicial debate over the proper standard for determine whether a defendant's counsel provided effective assistance.  The Supreme Court established a precise two-part requirement.  First "the defendant must show that counsel's representation fell below and objective standard of reasonableness."  Id. at 688.  Second, the defendant "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  Since Strickland, the Supreme Court has repeatedly applied its two-part standard in determine ineffectiveness claims.  See e.g. Kimmelman v. Morrison 477 U.S. 365 (1986); Darden v. Wainwright, 477 U.S. 168 (1986); Hill v. Lockhart, 474 U.S. 52 (1985).

Some Courts since Strickland have misapplied its
prejudice standard by condoning patently inexcusable
failures by defense counsel to investigate and prepare
defenses on the ground that there is no "reasonable
probability" that the evidence would have affected the
jury's decision. This misapplied standard is exactly what
happened here.

**A.    Attorney McBride and Attorney Keene had an actual
conflict of interest that denied Teti his rights
pursuant to the Sixth and Fourteenth Amendments
the effective assistance of counsel**

The Sixth Amendment provides that a criminal defendant
shall have the right to "the assistance of counsel for his
defense." This right has been accorded "not for its own
sake, but because of the effect it has on the ability of
the accused to receive a fair trial." United States v.
Cronic, 466 U.S. 648, 658 (1984). A criminal defendant's
Sixth Amendment right to counsel includes the right to be
represented by an attorney without undivided loyalty. Wood
v. Georgia, 450 U.S. 261, 271 (1981). This right is so
important that, unlike with other Sixth Amendment claims,
when a defendant alleges an unconstitutional actual
conflict of interest "prejudice must be presumed." Cuyler
v. Sullivan, 466 U.S. 335, 350 (1980). Harmless error
analysis does not apply. Id. at 349.

The United States Supreme Court recently addressed the requirement of automatic reversal upon a showing of actual conflict. In Mickens v. Taylor, 122 S. Ct. 1237, 1246 (2002), the Supreme Court evaluated a defendant's federal constitutional rights claim relative to his due process, and Sixth Amendment rights to the effective assistance of counsel, resulting from an actual conflict of interest. In Mickens, the Court commented that there are certain circumstances, including when the defendant's attorney actively represented conflicting interests, within which a defendant need not demonstrate that counsel's performance undermined the reliability of the verdict for relief. Mickens, at 1246. The facts in Teti's case demonstrate that trial counsel represented conflicting interest requiring reversal of Teti's conviction.

The trial court's reliance on Keane's contemporaneous representation of both LoBello and Teti in determining whether Teti proved the existence of a conflict in his Motion for a New Trial is erroneous. Simultaneous representation is not the linchpin from which a court will determine if a conflict exists. Cuyler v. Sullivan, 446 U.S. 335 (1980) (Defense counsel represents conflicting interests when one client possesses information that he could use to implicate the other client in exchange for a

reduced sentence). Under the federal standard the defendant
is ordinarily required to demonstrate prejudice. Id.
However, in a more recent decision, the Untied States
Supreme Court has left open the question of whether
successive representation of defendants with conflicted
interests requires automatic reversal, absent a showing of
prejudice. Mickens v. Taylor, 122 S.Ct. 1237, 1246 (2002).

At trial, the Superior Court found an actual conflict
of interest existed, but left open the question of whether
or not it so infected Teti's trial that dismissal was
warranted. Specifically, at trial, the Court found that
Keene's representation of both Teti and the informant
against Teti, LoBello, was an "unwaiveable conflict." (Tr.
3:47). The Court also commented: "I don't think there is
any doubt in the world that there is a substantial conflict
here." (Tr. 3:52). "On these facts, we've got, it's a
conflict, I don't think it's a potential conflict, I think
it's a real conflict. (Tr. 3:34). The Court further
commented: "Well, I think there are some problems with this
case, and there are going to be some issues on appeal here,
I don't know whether we can clean this case up well enough
because of the conflict." (Tr. 3:44).

Based on this record, Teti has met his burden of
proving an actual conflict. As such, Teti's rights to the

effective assistance of counsel pursuant to the 6th and 14th Amendments to the United States Constitution were violated because of trial counsel's actual conflict. Mickens v. Taylor, 122 S.Ct. 1237 (2002). Trial counsel's conflict deprived Teti of the benefit of unimpaired assistance of counsel.

Here, LoBello's testimony directly implicated Teti and was rewarded by a dismissal of federal complaints against his brother, Leonard LoBello, and his uncle, Anthony Vega. (R-126). These charges were dismissed in November 1999, after Leo LoBello's testimony against Teti in April 1999. In addition, the trial judge found in ordering Keene to withdraw, that LoBello's interests were directly opposed to Teti's. Specifically, the trial judge found Teti was calling LoBello to discredit him, to undercut the Commonwealth's case. "So it's not the situation were both defense counsel represent somebody with the same interest. It's not the same interest; and Mr. LoBello has a great interest in providing testimony that is adverse to Mr. Teti, because maybe he will get some benefit on his federal sentence for that." (Tr. 3:35). On the third day of the four-day trial, trial counsel McBride became aware, allegedly for the first time, that his co-counsel, Bradford

24

Keene, was contemporaneously representing the sole witness and government's informant, Leo Lobello.

In this case, LoBello's testimony was crucial to Teti's case. He was a percipient witness to the transactions at issue. His testimony was neither cumulative nor relative to an extraneous matter. In fact this Court found at trial that LoBello was being called by Teti to undercut the Commonwealth's case. In admonishing Attorney Keane, this Court said: "Mr. Keane, I don't think there is any doubt in the world that there is a substantial conflict here - - that you have a conflict. So, I'm going to ask you to withdraw from the case." (3-51). "The only issue now is whether that conflict - - your representation of these two people . . . I don't even think it matters that it was at the same time . . . but at least there was some overlap there . . . has interfered substantially with Mr. Teti's right to a fair trial."

The state court ignored the trial judge's initial findings and credited the trial courts subsequent finding absent any support in the record for the completely contradictory finding as to whether or not there was a conflict. Contrary to the United States Supreme Court's decision, in Mikens v. Taylor 122 S.Ct. 1237 (2002); the state court here erroneously held that the lynch pin of

determining conflict was simultaneous representation. (Teti at 287). This findings ignores the federal law to such a degree that there cannot be said to have been a decision on the merits of Teti's federal claim.

Here, the decision of the state court represents a particularly stark example of an appellate court's evisceration of Strickland. Despite both Attorney McBride and Attorney Keene's failure to discover and prevent a genuine conflict of interest, and despite the initial conclusions of the state trial judge that Attorney Keene's continued representation of Teti created an actual conflict of interest, the state court decided that neither attorney's performance was "measurably below" and even if it were, it did not prejudice Teti. The State court's opinion omits any sustained analysis of the potential effect of the conflicted counsel had on Teti's right to the effective assistance of counsel as Strickland plainly requires.

Based on these facts, Teti satisfies the federal burden of demonstrating his attorney represented conflicting interests requiring reversal of his conviction. Mickens v. Taylor, 122 S.Ct. 1237, 1246 (2002). As such, this claim should be reviewed de novo.

B. **Teti's trial attorneys denied him his rights to the effective assistance of counsel where they (1) failed to file a motion to sever the indictment and failed to object to the commonwealth's Motion to Join the Indictments; (2) introduced evidence of Teti's prior uncharged drug transactions, destroying Teti's entrapment defense; and (3) failed to deliver promised testimony on Teti's state of mind in support of his entrapment defense.**

Failure to file a Motion to Sever

Trial counsel's omission in failing to file motions to sever the indictment or to oppose the Commonwealth's Motion to Join rendered counsel's assistance ineffective.

Under Mass.R.Crim.P. 9(a)(3), a judge "shall join [related] charges for trial unless he determines that joiner is not in the best interests of justice." Under Massachusetts law, the determination whether joinder is appropriate rests in the discretion of the trial judge. Commonwealth v. Washington, 654 N.E.2d 334, 336 (1995), citing Commonwealth v. Montanez, 410 Mass 290, 303 (1991). Commonwealth v. Souza, 39 Mass.App.Ct. 103, 111 (1995). Massachusetts's courts have found joinder appropriate when "the offenses constitute a single line of conduct, grow out of essentially one transaction, and would be proved by substantially the same evidence." Commonwealth v. Montanez, supra, quoting from Commonwealth v. Gallison, 383 Mass. 659, 671 (1981). Where these criteria are not satisfied, and where the cumulative evidence of different

offenses would prejudice the defendant, severance should be granted. Commonwealth v. Montanez, 410 Mass. at 303.

Here, a period of three and one half months had elapsed between the date of the first and second offense. The transactions were clearly not a single line of conduct. The sales were not a series of deliveries or installments from one continuing transaction; they were separate transactions distinct in pattern, time, and quantity. "Where the logical relationship between the charged and uncharged offenses is more attenuated, a time span of fifteen minutes may be too much." Commonwealth v. Helfant, 398 Mass. at 228, n. 13(1986).

Here because the dates of the incidents in question were disparate enough as to not place them within a series of transactions or a single line of conduct a Motion for Severance would have been allowed.

Trial counsel's failure to file a motion to sever the indictment and to oppose the Commonwealth's Motion to Join, prejudiced denied Teti the effective assistance of counsel pursuant to Strickland v. Washington, 466 U.S. 668 (1984) , because it destroyed Teti's sole entrapment defense.  An entrapment defense requires Teti to prove that he was not predisposed to committing this crime.  The very nature of the entrapment defense grounds itself in the lack of a

defendant's predisposition to commit the criminal activity
- in this case drug sale. Absent a severance, Teti's theory
of defense is destroyed because the Commonwealth was free
to present to the jury evidence that Teti brokered the sale
of cocaine on two separate occasions on two different dates
months apart from another which nullified any claim by Teti
of his lack of predisposition.

Because the law of severance was clear and Teti's
burden to prove a lack of predisposition was crucial to his
defense, a competent counsel would have filed a Motion to
Sever. Kimelman v. Morrison, 477 U.S. 365 (1986). Trial
counsel's failure to protect the sole defense he relied
upon demonstrates trial counsel's incompetence.
This is not a case where a trial strategy is employed and
failed; rather it is a case where the defendant's sole
defense was compromised by shoddy work of trial counsel.
The state court denied relief claiming that Teti's trial
attorneys decision not to seek a severance "may have been a
strategic decision, designed to highlight Deignan's
initiation of each transaction. ( Teti at 287-88). This
reasoning failed to evaluate Teti's federal claim of
ineffective assistance of counsel and is unsupported by the
record. Miller v. Johnson, 200 F.3d 274 (5th Cir. 2000). As
such, this claim should be reviewed de novo.

## Trial Counsel's Error in Introducing Evidence of Teti's Prior Uncharged Drug Transactions That Were Not The Subject Of the Indictments Before The Jury Destroyed Teti's Entrapment Defense.

### Trial Counsel's Incompetence

In Massachusetts it is a fundamental rule that prosecution may not introduce evidence that a defendant previously has misbehaved, indictable or not, for the purpose of showing his bad character or propensity to commit the crime charged. The rationale for such a rule is simple, "Such evidence compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the [crime] immediately before it; and by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him."

An exception to this general rule may be made when the evidence is admissible for other relevant purposes. and where the danger of prejudice does not outweigh the probative value of the evidence. Commonwealth v. Tobin, 392 Mass. 604, 613-614 (1984). "Otherwise stated, the rule is 'that evidence of other offenses is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and in borderline

cases, admissible when its relevance outweighs the undue prejudice that may flow from it.' " Commonwealth v. Sapozik, 23 Mass. App. Ct. 236, 244 (1990) quoting Commonwealth v. Blow, 362 Mass. 196, 201 (1972) quoting Harper v. United States, 239 F.2d 945, 946 (D.C Cir. 1956).

Here, trial counsel erred in eliciting the testimony of both Agent Deignan and cooperating witness Leonard LoBello regarding additional uncharged drug transactions between Joseph Teti and Agent Deignan in light of Teti's theory of entrapment.

Specifically, trial counsel asked agent Deignan about uncharged sales with Teti, "When did they take place—what dates?" (Tr. 2:127). Deignan told the jury of at least two uncharged sales Teti engaged in with him (Tr. 2:128). Agent Deignan and cooperating witness LoBello, responding to cross-examination by trial counsel, offered personal accounts of instances Teti's of prior bad acts, specifically drug sales involving Teti. For instance, trial counsel asked LoBello, in front of the jury, if he had ever seen Teti passing cocaine to Deignan or if he had seen any money change hands. LoBello told the jury that Teti had sold drugs to Agent Deignan in Teti's house. " 'Yeah; right there, in his room' 'It was right there, with Matt [Deignan]; yeah' " (Tr. 3:25). The law is clear that

the prosecutor could not have elicited this evidence.   It is also clear that if the prosecutor introduced such damaging evidence reversal would be required.   Id.   In addition, trial counsel could not have had a reasonable strategic theory to justify introducing such damaging evidence.   But for trial counsel's error, Teti's uncharged drug transactions could not have otherwise been brought into the case.

## The Prejudice to Teti

Teti was prejudiced by trial counsel's error since the credibility of LoBello was a hotly contested issue at trial.   These additional instances of Teti's misconduct painted Teti as a bad person and a drug dealer. Because trial counsel elicited the prior sales, they were not as vigorously disputed as the indicted offenses. Of the two un-indicted sales that trial counsel put before the jury, no certificate of analysis to identify the drugs neither was available nor was there any evidence as to the dates of these sales[3].

---

[3] Trial counsel allowed these prior sales to be accepted by the jury without receiving the same level of scrutiny as the charged offenses. There were no DEA-7 forms involved, there was no cross-examination of a chemist, nor was there any reason offered to the jury to disbelieve the testimony of Deignan or LoBello. Trial counsel not only elicited evidence that destroyed Teti's sole defense; but, also made

In addition, trial counsel's decision to impeach LoBello with Teti's prior drug sales flies in the face of Teti's sole defense theory of entrapment.

The defense of entrapment arises only if the criminal conduct was the product of the "creative activity" of law enforcement officers or agents. Because trial counsel opened the door with the prior sales, the Commonwealth was able to redirect the witness regarding the details of each sale. Trial counsel conceded his mistake when he told the court "I realize [d] I opened the door with respect to the drugs…-no question about that--.." (Tr. 3:153). "I brought it out. I opened the door." (Tr. 3:154). In opening the door to the previous sale trial counsel admitted that he abandoned the only defense he relied upon, entrapment.

Moreover, trial counsel continued to mention the additional uncharged sales when directly examining Teti as he sat before the jury. Trial counsel asked Teti to admit these prior uncharged sales, by asking him, "For some you've been charged, and for some you're not even charged." (Tr. 4:34). Teti's admission bolstered the credibility of both LoBello and Deignan and destroyed Teti's credibility

---

no effort to cross-examine the witnesses regarding these uncharged sales.

33

on the issues of whether he was predisposed to commit the crimes.

The prejudice to Teti did not end with the irrational direct examination of Teti by his own counsel. Trial counsel compounded the problem when he alluded to the prior uncharged drug sales in his closing arguments- " '...there is always other cocaine here, and he's not charged with it,...'(Tr. 4:94), '—not once, not twice, but five times.' " (TR4-96). Finally, trial counsel abandoned all possibility of a not guilty verdict and all reliance on the entrapment defense when he admitted in the closing argument that Teti had made a 'mistake' and 'should have known better.' (Tr. 4:99/L 3-4). Commonwealth v. Westmoreland, 388 Mass. 269, 271 (1983) (trial counsel ineffective where he abandoned the client's sole defense inclosing argument).

In the findings on Teti's Motion for a New Trial, the trial Court attempted to justify McBride's conduct by holding that McBride's actions were both reasonable and strategic. (R-87). Specifically, the trial Court held that "attacking LoBello's credibility by questioning his truthfulness or introducing his criminal record would serve to invalidate LoBello's worth as a witness to the solicitation and the transactions, thereby attacking the very heart of Teti's' entrapment defense." (R-87). The

trial Court's finding is not supported by the trial transcript where the Court found that McBride was required to attack LoBello's credibility to properly maintain Teti's defense. (Tr. 3:47, 51-52). Specifically, at trial, the Court held that "Mr. LoBello is being presented as a witness who is trying to undercut - - who Mr. McBride would like to have him undercut the Commonwealth's case. He is not a friendly witness to Mr. Teti. (Tr. 3:47). The defense is calling LoBello to discredit him, to undercut the Commonwealth's case (Tr. 3:35). . . ."Mr. LoBello was being brought up here for this trial to try to undercut the government's case, and that his testimony was going to be - - Mr. McBride was going to try to make him look as bad as he could." (Tr. 3:52).

The state court denied Teti relief claiming that "the evidence of guilt was powerful, and where the challenged evidence may well have helped in the defense, we cannot fairly conclude the defendant was deprived of an otherwise available substantial ground of defense. Teti at 290. The state Court's reasoning failed to consider Teti's federal claims to justify a presumption of correctness of the state court findings.

Trial counsel's entire line of questioning and his argument to the jury contradicted his sole theory of

defense and deprived Teti of an available substantial
ground for defense- since no entrapment exists if the
defendant is ready, willing and able to commit the crime
whenever the opportunity presents itself. U.S. v. Groessel,
440 F.2d 602, 605 (5th Cir.), cert. denied, 403 U.S. 933, 91
S. Ct. 2263, 29 L.Ed.2d 712 (1971). As such, this Court
should review these claims de novo.

### D. TETI'S TRIAL COUNSEL FAILED TO DELIVER CRITICAL TESTIMONY OF TETI'S STATE OF MIND IN SUPPORT OF THE ENTRAPMENT DEFENSE DEPRIVING TETI OF HIS RIGHTS PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSITUTION.

Trial counsel's failure to deliver powerful and
promised testimony was prejudicial as matter of law. The
question of Teti's state of mind was an issue for the jury.
Trial counsel stated to the jury in his opening statement
that Teti had severe psychological issues that may have
compromised his judgment relative to this case. (Tr. 1:98).
Two witnesses, Dr. Douglass Phillips and Dr. Gary Prince,
treated Teti during the time he was pressured by LoBello to
participate in the drug transactions. Dr. Phillips would
have established that Teti suffers from a neurological
condition that puts him at risk both physically and
emotionally.  Dr. Prince would have confirmed that Teti's
neurological condition would have compromised his ability
to make reasoned decisions.  Both Dr. Phillips and Dr.

Prince were available as witnesses at trial. Trial counsel
failed to call either of these doctors.

In effect, trial counsel abandoned Teti's defense of
entrapment – which would include Teti's state of mind or
mental condition at the time he agreed to participate in
these transactions. Trial counsel's failure to present
Teti's medical doctors, as witnesses, substantially damaged
the very defense he solely relied on. "…The first thing
that the ultimately disappointed jurors would believe, in
the absence of some other explanation, would be that the
doctors were unwilling, viz., unable to live up to their
billing. This they would not forget." Anderson v. Butler,
858 F.2d 16, 17 (1988).

Furthermore, trial counsel compounded his error when
he referred to these doctors in closing arguments- "He made
mistakes, abused drugs, went to a psychiatrist, went to a
psychologist, read a book. He tried to do the right thing."
(Tr. 4:99-100). "To promise even a condensed recital of
such powerful evidence, and then not produce it," Id at 19,
substantially impaired Teti's defense and 'has likely
deprived the defendant of an otherwise available,
substantial ground of defense.'"

In denying Teti's Motion for a New Trial, the trial
Court held that McBride was justified in failing to call

certain defense witnesses he promised the jury he would call, because Teti could not afford them. McBride knew, or should have know that M.G.L. Ch. 261 §27 A-G, provides a means for a defendant, represented by private counsel, to petition the court for funds for expenses and experts if the defendant is indigent. Both the statute and McBride's ethical obligations to Teti required him to investigate and secure for trial all witnesses favorable to Teti regardless of the expense. Northrop v. Trippett, 265 F.3d 372 (6th Cir. 2001)' cert. denied 122 S.Ct. 1258 (2002)(counsel's decision not to file pleadings or call witness can not be justified by cost).

In addition, McBride's failure to deliver powerful and promised testimony was prejudicial as matter of law. The question of LoBello's credibility was an issue for the jury. Trial counsel promised the jury in his opening statement that they would hear from two doctors as witness who would corroborate Teti's theory. Specifically, McBride told the jury that Teti "had psychological problems at the time, that Teti was "under the influence of medication" because he was "using and abusing drugs." (Tr. 1:98).

Trial counsel's failure to present any evidence of Teti's addiction and medication, after promising the jury that the evidence would support his theory of entrapment,

had the effect of corroborating LoBello's testimony that
Teti voluntarily and knowingly engaged in the conduct
charged. As a result; trial counsel substantially damaged
the very defense he solely relied on, namely, that LoBello
was lying.

The state court denied Teti's due process claim
holding that McBride's promise to call Teti's psychiatrists
would not be viewed by the jury as a "dramatic promise."
Teti at 291. Such a holding ignores the United States
Supreme Court's in Liles v. Saffle, 945 F2d 333 (10th Cir.
1991), cert denied, 502 U.S. 1066 (1992) (due process
violated by denial of motion for psychiatrist in
preparation of defense). The state court's finding ignores
Teti's federal claims pursuant to the Sixth and Fourteenth
Amendments to the United States Constitution. Strickland v.
Washington, 466 U.S. 668 (1984). As such there was no
adjudication on the merits of this claim sufficient to
warrant any presumption of correctness. This claim must be
reviewed de novo. Miller v. Johnson, 200 F.3d 274 (5th Cir.
2000).

Although purporting to follow Strickland, these and
other decision have misapplied its prejudice standard by
demanding overwhelming evidence , not simply a "reasonable
probability" that the trial result would be different.

39

GROUND TWO: TETI WAS DENIED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSITUTION WHERE HIS TRIAL ATTORNEY'S HAD A ACTUAL CONFLICT OF INTEREST.

## A.   The Contradictory Findings.

Here, at trial, the Superior Court found an actual conflict of interest existed, but left open the question of whether or not it so infected Teti's trial that dismissal was warranted. Specifically, at trial, the Court found that Keane's representation of both Teti and the informant against Teti, LoBello, was an "unwaivable conflict." (Tr. 3:47). The Court also commented: "I don't think there is any doubt in the world that there is a substantial conflict here." (Tr. 3:51). "There is a flat out conflict here." (Tr. 3:52). On these facts we've got, it's a conflict; I don't think it's a potential conflict, I think it's a real conflict." (Tr. 3:34). The Court further commented: "Well, I think there are some problems with the case, and there are going to be some issues on appeal here; I don't know whether we can clean this case up well enough because of the conflict." (Tr. 3:44).

In denying Teti's Motion for a New Trial, the same trial court held that Teti had failed to prove the existence of a conflict.

Specifically, the trial court held that:

"Teti avers that Keene has an actual conflict by "contemporaneously" representing LoBello, in the past, and Teti, at the time of trial. The inference Teti wishes the court to make is this: Keene has a duty of loyalty to help his government informant client(LoBello) get a better sente4nc and prison location, well-accomplished by his testimony seeking a conviction of an alleged drug dealer (Teti). This he says, would conflict with Keene's duty to him, against conviction and for an aggressive examination of witnesses." (R-87).

The trial court claimed that:

Teti does not substantiate his assertion that Keene simultaneously represented LoBello and Teti." In fact, the trial court found that "Teti (did) not provide any evidence by affidavit or otherwise that Keene was still representing LoBello at the time of Teti's trial—or even that he was representing LoBello a year before trial. Under the circumstances, Keen had no continuing duty of loyalty of LoBello and Teti has not shown an actual conflict of interest to warrant an evidentiary hearing or the grant of his motion."(R-87).

## The Lack of Conflict-Free Counsel

After finding Keene had an actual conflict, the trial judge ordered him to immediately withdraw as counsel for Teti. (Tr. 3:55). The Court then ordered Keene out of the courtroom. Because of the trial court's order to Keene, Keene had no opportunity to discuss his conflict with Teti nor to advise Teti of his right to conflict free counsel. (R-67). This left co-counsel McBride to explain how this obvious conflict could have evaded him especially in light of the fact that Attorney McBride knew the identity of the informant at least a month prior to trial. (R-70).

41

Attorney McBride knew or should have known that prior
to allowing Keene to assist him at trial, he was required
under the Supreme Judicial Court Rules of Professional
Conduct, to conduct an internal investigation into
potential conflicts. Specifically, Disciplinary Rule
1.9(D) prohibits an attorney from representing a client if
an associate who has a conflict is forced to withdraw.
Rule 1.9 (D) states that "if a lawyer is required to
decline employment or to withdraw from employment under a
disciplinary Rule, no partner or associate or any other
lawyer associated with him or his firm may accept or
continue such employment. Because Attorney McBride and
Attorney Keene were co-counsel each, representing Teti, a
conflict for one attorney forces the other attorney to
withdraw as a result of the same conflict, absent a waiver
from the client. Mass. Rules of Professional Conduct,
Supreme Judicial Rule 1.7(a).

Because of their joint representation and co-counsel
Keane's conflict, there is no question here that both Keene
and McBride should have withdrawn. Disciplinary Rule 5-
105, as in force at the time of this case, required that:

> (A) A lawyer shall decline proffered employment if
> the exercise of his professional judgment in behalf of
> a client will be or is likely to be adversely affected
> by the acceptance of the proffered employment, or if
> it would be likely to involve him in representing

differing interests…(B) A lawyer shall not continue multiple employment if the exercise of his independent judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests… (C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure…(emphasis added).

Additionally, Massachusetts Rules of Professional Conduct Supreme Judicial, Rule 1.7(a) states that:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents **after consultation.**

Attorney Keene had an actual conflict that effected attorney McBride's ability to render conflict free counsel to Teti. McBride was just as culpable.

Here, the Court commented on the conflict as to Attorney Keane: "...you knew that you had represented both of theses people, that Mr. LoBello was being brought up here for this trial to try to undercut the government's case, and that his testimony was going to be - - Mr. McBride was going to try to make him look as bad as he could; and furthermore, that whatever testimony that he could give that was favorable to Mr. Teti's conviction might help him in his federal case, in getting relief from

sentencing.  There is a flat-out conflict here."  (Tr.
3:52).  This Court makes it clear that there was an actual
conflict and that Attorney McBride, as co-counsel, was
affected by this conflict.  (Tr. 3:52).  The Court says:
"...but he [Keane] was co-counsel in the sense that he
continued to have an appearance in at the same time that
you had an appearance in, and he was sitting at counsel
table.  (Tr. 3:75).

Based on these facts, it was obvious that Keene and
McBride share an unwaivable conflict.  Attorney Keene had
an actual conflict of interest that effected Attorney
McBride's ability to render conflict-free counsel.  Because
of the joint conflict of Attorneys Keene and McBride, Teti
was denied his right to conflict-free counsel, and Teti's
conviction must be reversed.  Holloway v. Arkansas, 435
U.S. 475, 489 (1978) (when trial court fails to discharge
its duty to determine whether a defendant is receiving
assistant of counsel unburdened by a conflict of interest,
prejudice is presumed, and reversal is automatic.); See
also, Wood v. Georgia, 450 U.S. 261, 272, n.18 (1981).
Mickens v. Taylor, 122 S.Ct. 1237 (2002).

**E.   Teti Did Not Consent To Or Waive The Conflict.**

There is no question here that Teti did not consent to waive his right to conflict clear counsel. Clearly Teti could not consent to a relationship that was not disclosed to him. The interests of Teti and cooperating witness LoBello were diametrically opposed. This conflict of interest tainted trial counsel's representation, and deprived Teti of his right to "untrammeled and unimpaired assistance of counsel free of any conflict of interest and unrestrained by commitments to others." Simultaneously representing a criminal defendant and a prosecution witness in the same case is an archetypal conflict if interest. Such dual representation clearly establishes an actual conflict. Cuyler v. Sullivan, 446 U.S. 335 (1980); Mikens v. Taylor, 122 S.Ct. 1237 (2002).

In addition, that Teti had no ability to consult with an attorney who did not share an actual conflict prior to making his decision to continue with Attorney McBride, is the fatal flaw that prevented a free and voluntary waiver of Teti's right to conflict free counsel. Lockhart v. Terhune, 205 F.3d 1223 (9th Cir. 2001); Ciak v. United States, 59 F.3d 296 (2nd Cir. 1995). The trial courts attempt to cure this "obvious conflict" failed because the trial court did not insist that Teti consult with an attorney who is free from any conflict to enable Teti to

45

make an informed decision as to his legal options. That Teti consulted with Attorney McBride, who was co-counsel with Attorney Keene, and who shares the blame for not having recognized or investigated the conflict, falls far short of the requirement that Teti be allowed to consult with an attorney who had no interest and no conflict. *Massachusetts Rules of Professional Conduct Supreme Judicial, Rule 1.7(a).* Because Teti was not given the opportunity to consult with counsel free from any conflict, prejudice resulted. Burden v. Zant, 24 F.3d 1298 (11th Cir. 1994)(on remand from Burden v. Zant 510 U.S. 132 (1994) court of appeals concluded that writ should be granted because attorney who represented petitioner prior to trial also represented another suspect and negioated agreement for later individual to testify against petitioner). Because the state court ignored Teti's federal claims, this claim is entitled to de novo review.

CONCLUSION

For all of the above stated reasons, this Court should allow Teti's petition.

1

Respectfully Submitted,
JOSEPH TETI
By His Attorney


Rosemary Curran Scapicchio
Four Longfellow Place
Suite 3703
Boston, Massachusetts 02114
(617) 263-7400
BBO # 558312


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by first class mail, postage prepaid or by hand delivery.

Dated:

2