# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOSEPH TETI** )<br>        **Petitioner,** )<br> )<br>**v.** )<br> )<br>**KATHLEEN M. DENNEHY** )<br>        **Respondent.** )<br> ) | **Civil Action No.05-10234-RWZ** |

## RESPONDENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

After a jury trial in Suffolk Superior Court before Massachusetts Superior Court Associate Justice Nonnie S. Burns, the petitioner was convicted of one count of trafficking in an amount of cocaine in excess of 200 grams in violation of M.G.L. c.94C, § 32E(b)(4). After unsuccessfully pursuing a motion for a new trial and an appeal in the Massachusetts state courts, the petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By this habeas action, the petitioner contends that his continued incarceration by the respondent Kathleen M. Dennehy, the Commissioner of the Massachusetts Department of Corrections, violates federal law. This memorandum of law is submitted in opposition to the petition for habeas corpus. The petition must be denied where the petitioner cannot demonstrate that the state court's adjudication of his ineffective assistance of counsel claims on the merits resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## PRIOR PROCEEDINGS

On May 18, 1998, a Suffolk County grand jury indicted Joseph Teti ("the petitioner") for trafficking in an amount of cocaine in excess of 200 grams in violation of M.G.L. c. 94C,

§ 32E(b)(4).  *See* Respondent's  Supplemental Answer ("RSA") at Exhibit 3, R. 77.  On

November 12, 1998, the indictment was dismissed without prejudice to the Commonwealth.  *Id.*

On November 12, 1998, a Suffolk County grand jury re-indicted the petitioner on the same

charge.  *See* RSA at Exhibit 3, R. 1-2.

On April 9, 1999, after a jury trial in Suffolk Superior Court before Massachusetts

Superior Court Associate Justice Nonnie S. Burns, the petitioner was convicted of one count of

trafficking in an amount of cocaine in excess of 200 grams in violation of M.G.L. c. 94C,

§ 32E(b)(4).  *See* RSA at Exhibit 3, R. 6.  Judge Burns sentenced the petitioner to a state prison

term of a minimum of fifteen years to a maximum of fifteen years and one day.  *Id.*  The

petitioner timely noticed an appeal on May 4,1999.  *Id.* at R. 7.  On November 19, 2001, the

petitioner filed a motion for a new trial pursuant to Mass. R. Crim. P. 30(b), 378 Mass. 900

(1979), that was denied by Judge Burns on August 15, 2002.  *Id*. at R. 7-8.  On September 30,

2002, the petitioner filed a motion for reconsideration of the judge's denial of his motion for new

trial.  *Id.*  The judge denied the motion for reconsideration on October 9, 2002.  *Id.*  On October

28, 2002, the petitioner appealed both the denial of the Rule 30 motion and the denial of the

motion for reconsideration.  *Id.*  On October 28, 2002, the Massachusetts Appeals Court

consolidated the defendant's direct appeal with the appeals of the denial of his Rule 30 motion

and his motion for reconsideration.  *Id.*

The petitioner raised the following claims in the Massachusetts Appeals Court: (1) the

trial court erred in denying the petitioner's for a new trial without an evidentiary hearing where

its findings on the motion were allegedly directly contradicted by its findings at trial relative to

the existence and effect of trial counsel's ineffective assistance; and (2) the trial court's findings

that petitioner's trial counsel did not violate his right to a fair trial and the effective assistance of conflict-free counsel when he failed to inform the petitioner that co-counsel Keene represented the informant against the petitioner were clearly erroneous. *See* RSA, Exhibit 2. On January 6, 2004, the Massachusetts Appeals Court affirmed the petitioner's conviction and the denial of his new trial motion. *See Commonwealth v. Teti*, 60 Mass. App. Ct. 279, 801 N.E.2d 279 (2004).

On February 4, 2004, the petitioner filed an application for leave to obtain further appellate review ("ALOFAR") in the Massachusetts Supreme Judicial Court ("SJC") asserting that (1) the Appeals Court decision determining that remand was unnecessary because the attorneys involved were bound by an ethical duty to be candid and honest in answering the court's questions surrounding a conflict issue was unreasonable in light of the Board of Bar Overseers' recommendation that one of the attorneys, John McBride, be suspended from the practice of law for three years for lying to the Board; (2) the Appeals Court finding that attorney Keene represented the petitioner at trial, together with attorney McBride, while Keene also represented the informant against the petitioner, Leo Lobello, required the Appeals Court to conclude that there was an actual conflict of interest which violated the petitioner's right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article XII of the Massachusetts Declaration of Rights; (3) the Appeals Court ignored evidence demonstrating that Keene and McBride possessed Lobello's federal pre-sentence report and possessed videotapes of the petitioner and Lobello in concluding that neither Keene nor McBride was aware that Lobello was an informant on the petitioner's case until one week prior to trial; and (4) the Appeals Court finding that the petitioner received the effective assistance of

counsel was clearly erroneous.  *See* RSA, Exhibit 6.  On March 10, 2004, the SJC denied the petitioner's ALOFAR.

Less than a year later, on February 4, 2005, the petitioner filed the underlying application for a writ of habeas corpus, along with a memorandum of law in support thereof.  *See* Docket at 1 and 2.  The petitioner alleges that (1) his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution were violated where he was denied the effective assistance of counsel in his criminal case; and (2) he was denied his rights to due process and a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution where his trial attorneys had an actual conflict of interest.  *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 19 and 40.  On March 22, 2005, the respondent filed an answer and supplemental answer.  *See* Docket at 4 and 6.  The respondent now files this memorandum in opposition to the petition for habeas corpus.

## STATEMENT OF THE FACTS

The recitation of the underlying facts by the Massachusetts Appeals Court is entitled to the presumption of correctness under 28 U.S.C. §2254(e)(1).  *Dolinger v. Hall,* 302 F.3d. 5, 7 n. 5 (1st Cir. 2002).  The United States Court of Appeals for the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings."  *Mastracchio v. Vose*, 274 F. 3d 590, 598 (1st Cir. 2001).  The state court's findings of facts can be overcome only if the petitioner demonstrates that they were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings."  *Id.* at 597-598, *quoting* 28 U.S.C. § 2254(d)(2).

The Massachusetts Appeals Court  provided the following facts:

4

Matthew Deignan, a special agent for the United States Drug Enforcement Administration, was led to the [petitioner] by an informant named Leo Lobello. Lobello had been a friend of the [petitioner], and used this relationship to facilitate drug transactions between the [petitioner] and Deignan.  On five separate occasions between May, 1996, and May, 1997, the [petitioner] sold cocaine to Deignan.  Two of these sales (the subjects of the present indictments), as well as some of the conversations leading to the sales, were recorded on video and audio tape.

The [petitioner], substantially relying on a defense of entrapment, testified on his own behalf to the effect that he had a substance abuse problem, which he was addressing.  He further indicated that he was called and contacted repeatedly by Deignan, who pressured him to sell cocaine.

The [petitioner] also called his former friend, Lobello, who was serving a sentence in Federal prison on narcotics convictions.  Lobello, who was treated as a hostile witness, was called for two reasons.  First, it was hoped that Lobello would bolster the defense claim that the [petitioner] was not predisposed to sell cocaine.  Secondly, Lobello was painted as the instigator of the drug transactions, as well as a reprobate and liar, testifying to curry favor with the Federal authorities.  (FN2)[1]

Facts underpinning the alleged conflict.  At different points in time, Attorney Bradford Keene represented both Lobello and the [petitioner].  Keene came to represent Lobello first when, in or about April of 1998,  (FN3)[2] Lobello's mother, Marie, paid him $2,000 to attempt to have Lobello transferred from a Federal prison in South Carolina to one closer to his family in Massachusetts.  Keene never met, nor spoke, with Lobello.  The sum total of his work consisted of making a few telephone calls  to the prison authorities in South Carolina, who never responded to his inquiries. (FN4)[3]

---

[1] Lobello was hoping to receive a reduction in his sentence for his "substantial assistance" to the government.  Rule 35(b) of the Federal Rules of Criminal Procedure allows a [petitioner]'s sentence to be reduced upon the government's motion made within one year of sentencing if the [petitioner], after sentencing, provides substantial assistance in investigating or prosecuting another person.

[2] Keene told the judge he had been contacted by the Lobello family "[a]t some point about a year ago."  Keene also stated of the undated receipt produced by the assistant attorney general, indicating that Keene had received $2,000 from the Lobello family, "I would say it was about a year ago."  The trial of the [petitioner] took place in April, 1999.

[3] "The complete extent of my representation of Leonard Lobello was, retrospectively, and as aforementioned, to attempt a transfer of him from federal prison in South Carolina to a facility in or near the Commonwealth of Massachusetts.  He retained another attorney for all appellate work"

5

Approximately one month later, in May, 1998, after the [petitioner] had been arrested, charged, and arraigned on the matter at hand, Keene was privately retained to represent him. Keene worked on the case for a relatively short period of time when, in January, 1999, he received a call from Attorney John McBride. The crux of the call was that the [petitioner] had terminated Keene and hired McBride. After sending the file to McBride's office, Keene did nothing. Although it was anticipated that Keene would withdraw his appearance as attorney for the [petitioner], (FN5)[4] he never did. (FN6)[5]

On the morning of the third day of trial, the assistant attorney general who was prosecuting the case informed the judge that she had just learned (erroneously, as it turns out) that Keene had been retained by Lobello's family to file a " Rule 35 [motion] for relief from sentencing." In fact, Keene had been retained to attempt to have Lobello transferred from a Federal prison in South Carolina to one closer to his family in Massachusetts.

Needless to say, the trial ground to a halt. The trial judge thoroughly aired the issue. Keene, perhaps indicative of the  limited nature of his role, was not present in court at the time, arriving midway through the hearing. McBride repeatedly informed the judge that Keene had never told him of his relationship with Lobello and that he was shocked at the revelation. (FN7) [6]

---

[4] In a letter dated February 4, 1999, to the assistant attorney general handling the case, McBride indicated that he was the [petitioner]'s new attorney and that "Keene will be filing a withdrawal shortly." At a subsequent motion hearing held March 2, 1999, it appears Keene did not attend.

[5]The record is in conflict as to why Keene stayed on. Keene indicated that McBride, on the Friday prior to the Monday start of trial, called and asked him to " 'second seat' [McBride] at the upcoming trial"; McBride, in turn, indicated that Keene, who had never tried a case in Superior Court, asked to stay on, wishing to learn. What the parties do agree upon is that Keene did nothing other than observe. Indeed, when the case was called before the judge, the clerk indicated that the [petitioner] was "represented by Attorney John McBride"; before the venire, the clerk informed the potential jurors of the same; McBride told the jurors that "[s]itting with me at counsel table is Attorney Bradford Keene, with offices in Lynnfield, who will be with me." When Keene was dismissed from the case, midtrial, nothing was said to the jury.

[6] "Keene never told me--never, ever told me he worked for, received any money for or from Leo Lobello or his family, ever, judge. This is a total shock to me." "As an officer of the court, he never told me anything about Leo Lobello." In answer to the question, "Mr. Keene never told you that he had represented either [Lobello] or that he had ever received any money from the Lobello family," McBride responded, "Absolutely, judge." "I will go to my grave right now and tell you that Keene never told me that he had received one--that he had ever represented Lobello."

Keene, upon his late arrival, told the court that about one year prior to trial, he was asked by the Lobello family if it would be possible for Lobello to be transferred to a correctional facility closer to his family.  Keene stated he made several telephone calls to a prison official at the South Carolina facility where Lobello was being held.  Apparently, Keene never actually spoke with the prison official, and his messages went unanswered. According to Keene, "[t]hat [was] the extent of my relationship....  I have never spoken to Leo Lobello, I don't know the man;  and that's the extent of my relationship."  Keene stated that at the time of his activity on Lobello's behalf, he was representing the [petitioner].  He was, however, unaware that Lobello had been an informant against the [petitioner], as "[t]here was no disclosure to me at that point in time nor at any time during my tenure as official counsel to [the [petitioner]]."  When pressed by the judge as to when he had learned of Lobello's status as an informant against the [petitioner], Keene stated it had been only "[a]bout a week" before trial.  As for the failure to disclose his having represented Lobello, Keene again emphasized his limited involvement with Lobello:  "the extent of my relationship with Leo Lobello was to see if I could get him moved.  It had no bearing on anything but that.  The family came to me....  I made several attempts to get him moved, but that was the extent of my relationship....  I have never talked to Leo Lobello, I have never met the man.  That was it."

Both Keene and McBride told the judge they had not discussed any aspect of Keene's representation of Lobello.  After reviewing Keene's copy of Lobello's case file, the judge decided to "take Mr. Keene at his word that he ... didn't know Mr. Lobello's name before last week."

The judge also inquired of the [petitioner], who stated that he had initially been represented by Keene, but that McBride had taken over the case several months before. The [petitioner] informed the judge that he was "quite satisfied" with McBride's representation, his connection to Keene notwithstanding.  (FN8)[7]

*Commonwealth v. Teti*, 60 Mass. App. Ct. 279, 281-284, 801 N.E.2d 279, 282-284 (2004).

---

[7] Regarding the connection between Keene and McBride, McBride labored to make clear that he "never met Brad Keene in my life or talked to him until January [the trial commencing in April], when I knew that [the [petitioner]] wanted to retain me to represent him.  The only reason that Brad Keene is in the courtroom today is because he said, 'John, look, can I sit with you in this jury trial?  I want to learn something.' ... But that's the extent.  I said fine--you know, just sit in there and shut up, and I'll do everything, and maybe you can learn something."

## ARGUMENT

**I.    The Habeas Petition Should Be Denied Where the Petitioner's Ineffective Assistance of Counsel Claims Were Properly Adjudicated by the State Court, Which Did Not Render A Decision That Was Contrary To, Or An Unreasonable Application of, Clearly Established Federal Law.**

### A.    The Standard of Review.

"Under the AEDPA, a state prisoner can prevail only if the state court's decision `was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States.'" *Tyler v. Cain*, 533 U.S. 656, 660 (2001) (*quoting* 28 U.S.C. § 2254(d)(1)).   A state-court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances:  (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state-court decision involves an "unreasonable application" of Supreme  Court precedent  "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407-09, 413.  Merely that the state court reached an incorrect result is not sufficient – the result also must be unreasonable.  *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002) (*citing Taylor*, 529 U.S. at 411); *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc) ("`some increment of incorrectness beyond error is required'. . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court," *quoting Francis S. v. Stone*, 221 F.3d

100, 111 (2d Cir. 2000)). Where, for instance, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied. *McCambridge*, 303 F.3d at 37 (*citing O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998)).

In some habeas cases, the resolution of the petitioner's claims will turn entirely on the state court's determination of the underlying factual issues. *DiBenedetto v. Hall*, 272 F.3d 1, 7 n.1 (1st Cir. 2001), *cert. denied*, 535 U.S. 1024 (2002). This is because, under the AEDPA, state court factual determinations are "presumed to be correct," unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). The presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion, *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *see also Thompson v. Keohane*, 516 U.S. 99, 111-13 (1995) (for purpose of *Miranda*, scene-setting factual findings involving the trial court's assessment of credibility, are presumed to be correct), and extends to factual determinations made by both state trial and appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003).

> B.   **The State Court's Decision Relative to the Petitioner's Ineffective Assistance of Counsel Claims Were Neither Contrary To, Nor An Unreasonable Application of, Clearly Established Supreme Court Authority**.

In *Williams v. Taylor*, the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), was the clearly established federal law that controlled claims related to ineffective assistance of counsel. *Williams v. Taylor*, 529 U.S. at 390-391. Thus, a petitioner alleging ineffective assistance of counsel must establish two elements in state court in order to prevail:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense.

*Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir. 2002), *citing Strickland*, 466 U.S. at 687.

In state court, the petitioner bore the heavy burden of proving ineffective assistance. *Scarpa v. DuBois*, 38 F.3d 1, 8-9 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995); *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993)(requiring the two-part analysis articulated above). First, "'judicial scrutiny of counsel's performance must be highly deferential.'" *Ouber v. Guarino*, 293 F.3d at 25, *citing Strickland*, 466 U.S. at 689. Furthermore, the reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented. *Id., citing Bell v. Cone*, 535 U.S. 685, 696 (2002); *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992). Only if, "in light of all the circumstances, the [alleged] acts or omissions of counsel were outside the wide range of professionally competent assistance," can a finding of deficient performance ensue. *Ouber v. Guarino*, 293 F.3d at 25, *quoting Strickland*, 466 U.S. at 690. Finally, counsel's alleged blunders are not to be "judged solely by the 'surrounding circumstances' of the representation, but, rather, [are to] be judged [by the state court] in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law." *Scarpa v. DuBois*, 38 F.3d at 15. *See also Matthews v. Rakiey*, 54 F.3d 908, 911 (1st Cir. 1995).

Secondly, even if a lawyer's performance is constitutionally unacceptable, relief will be withheld unless the petitioner demonstrates that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Ouber v. Guarino*, 293 F.3d at 26, *quoting Strickland*, 466 U.S. at 694.  While this level of prejudice may be presumed in a few settings, that is the exception, not the rule.  *Id.* (*citing Strickland*, 466 U.S. at 694).  Indeed, the petitioner must demonstrate that he was prejudiced, *i.e.*, that his attorney's parlous conduct may have altered the outcome of the case.  *Id.*(*citing Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).  Although the possibility of a different outcome must be substantial in order to establish prejudice, it may be less than fifty percent.  *Id.*  (*citing Strickland*, 466 U.S. at 693 (explaining that "a [petitioner] need not show that counsel's deficient conduct more likely than not altered the outcome in the case").

1.    **The State Court's Decision Relative To The Petitioner's Ineffective Assistance of Counsel Claim Concerning Trial Counsel's  Alleged Conflict Was Neither Contrary To, Nor An Unreasonable Application of, Clearly Established Supreme Court Authority**.

The petitioner claims that he was denied the effective assistance of counsel where attorneys McBride and Keene had an actual conflict.  *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at  p. 21.  In its review of the record, the Appeals Court reasonably rejected this assertion, explaining:

> To determine whether counsel was ineffective, we employ the well-known two-step analysis:  "whether there has been serious incompetency, inefficiency, or inattention of counsel--behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer--and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense."  *Commonwealth v. Saferian*, 366 Mass. at 96, 315 N.E.2d 878.
>
> As to whether McBride was ineffective in failing to advise the [petitioner] regarding Keene's alleged conflict, or in failing to ascertain whether Keene had such a conflict, we conclude he was not.  Keene and McBride emphasized that Keene was essentially an observer;  that Keene learned of Lobello's status as an informant only a week before trial; and that McBride found out about Keene's representation only on the third day of trial.  Via affidavit, Keene represented that following McBride's taking the case from him, he

11

"played no further role in [the] defense" until asked to join McBride at counsel table a few days prior to the start of trial.

In any event, we discern no prejudice stemming from McBride's alleged ineffectiveness in this regard. It is difficult to see how better work by McBride--in this case, informing the [petitioner] of Keene's prior representation of Lobello--would "have accomplished something material for the defense." *Commonwealth v. Satterfield*, 373 Mass. 109, 115, 364 N.E.2d 1260 (1977). The [petitioner] now insists that had he been so informed, he would not have elected to continue to be represented by McBride. This assertion is belied by the [petitioner]'s assertion to the judge that he was "quite satisfied" with McBride's representation.

The [petitioner] also suggests in his affidavit that he was pressured by McBride into "proceed[ing] with the trial." This assertion is likely intended to counter the suggestion that the [petitioner] waived any objection to the conflict. *See, e.g., Commonwealth v. Jones*, 403 Mass. 279, 287-288, 526 N.E.2d 1288 (1988). The judge conducted a colloquy of the [petitioner] with respect to the [petitioner]'s satisfaction with McBride's representation. It is disingenuous for the [petitioner] now to suggest that had he been given the opportunity to consult with other counsel unrelated to the litigation, he would have insisted on not being represented by McBride.

*Commonwealth v. Teti*, 60 Mass. App. Ct. at 288-89, 801 N.E.2d at 286-87. In its decision, the

Massachusetts Appeals Court applied the performance/prejudice framework analysis mandated

by *Strickland*. It is of no consequence that the Appeals Court did not explicitly mention

*Strickland* where it applied the Massachusetts' enunciation of the ineffective standard derived

from *Commonwealth v. Saferian*, 366 Mass. 89, 315 N.E. 878 (1974). As the First Circuit has

affirmed, *Saferian* is the functional equivalent of *Strickland*. *See Ouber v. Guarino*, 293 F.3d at

44, citing *Scarpa*, 38 F.3d at 7-8. Since the Appeals Court identified and articulated the

substance of the *Strickland* standard, and was not presented with facts that were materially

indistinguishable from those at issue in *Strickland*, the "contrary to" portion of the analysis

drops from the equation. *See Williams v. Taylor*, 529 U.S. at 406 ("a run-of-the mill state-court

decision applying the correct legal rule from our cases to the facts of the prisoner's case would

not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). In other words, *Strickland* and

its progeny do not require an outcome "contrary to" that reached by the Appeals Court.

In the instant case, the petitioner claims that the facts of his case demonstrate that trial counsel represented conflicting interests requiring reversal of his conviction. *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 22.[8] However, a review of the Appeals Court's decision demonstrates that it was an objectionably reasonable application of *Strickland*. First, the Appeals Court reasonably determined that the petitioner failed to establish an actual conflict of interest. *See Commonwealth v. Teti*, 60 Mass. App. Ct. at 285, 801 N.E.2d at 285.[9] Second, the Appeals Court, while passing over the question of whether there existed a "tenuous" conflict, reasonably determined that the petitioner

---

[8] The petitioner relies upon *Mickens v. Taylor*, 535 U.S. 162, 173-174 (2002) in his mistaken assertion that the facts of his case demonstrate an actual conflict requiring the reversal of his conviction. *See* Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 22. Where the state court expressly determined that no actual conflict occurred during the petitioner's trial, see *Commonwealth v. Teti*, 60 Mass. App. Ct. at 285, 801 N.E.2d at 285, the petitioner's reliance on *Mickens v. Taylor* is misplaced. Furthermore, in *Bell v. Cone*, 535 U.S. 685, the United States Supreme Court held that prejudice may be presumed in three narrowly circumscribed situations. *See Ouber v. Guarino*, 293 F.3d at 33. First, a trial is presumptively unfair if the accused is completely denied the presence of counsel at a critical stage of the proceeding. *Id.*, citing *Bell v. Cone*, 535 U.S. at 695-696 (citing *Hamilton v. Alabama*, 368 U.S. 52,54 (1961)). Second, such a presumption is warranted if "'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Id.*, quoting *Bell v. Cone*, 535 U.S. at 696 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). Third, prejudice may be presumed in the presence of circumstances under which a competent lawyer would likely not be able to render effective assistance. *Id.*, citing *Bell v. Cone*, 535 U.S. at 696 (citing *Powell v. Alabama*, 287 U.S. 45 (1932). Thus, prejudice may not be presumed in the instant case.

[9] As the Appeals Court succinctly stated in a footnote, "the [petitioner] makes much of the judge's statements during the hearing on the issue to the effect that an actual conflict existed. That the judge, on first impression, believed there was a conflict did not prevent her from considering the issue further, and then specifically finding, in a reasoned and reflective memorandum denying the defendant's motion for a new trial, that there was, in fact, no conflict. *See Commonwealth v. Teti*, 60 Mass. App. Ct. at n.11, 801 N.E.2d at n.11.

failed to demonstrate prejudice.  *Id.* at 286.    It is worth noting that the Appeals Court found it significant that when questioned by the trial judge about the alleged conflict, the petitioner indicated he was "quite satisfied" with his trial counsel.  *Id*. at 287.

Additionally, the record supports the Appeals Court's conclusion that the petitioner failed to suffer any prejudice.  *See* RSA, Exhibit 3 at R. 92-93.    In a memorandum of decision and order on the petitioner's motion for new trial, Judge Burns assumed without deciding that there was a potential conflict of interest through the association Keene and McBride.  *Id*. at 92.  Judge Burns explained that trial counsel called Lobello as a hostile witness, and in this capacity trial counsel had a legitimate strategic need not to attack Lobello's credibility by aggressive direct examination.  *Id.*   As Judge Burns further explained, trial counsel was relying on Lobello's testimony as witness to the transactions to show the efforts of Deignan to get the petitioner to sell drugs.  *Id.*   Judge Burns also noted that it was important for the jury to find Lobello credible.  *See* RSA, Exhibit 3 at R. 93.  Furthermore, as Judge Burns determined, even if Lobello could have bettered his own position at this point (he had already been sentenced; he was considering pursuing post-conviction relief or requesting relocation of his place of incarceration), he could only do so by telling the truth – and that is just what trial counsel wanted him to do.  *Id.*    Thus, Judge Burns reasonably concluded that there was no conflict and the petitioner made no showing that Keene's potential conflict of interest had any effect on trial counsel's performance.  *Id.*   Accordingly, the petitioner cannot demonstrate that the decision of the Massachusetts Appeals Court unreasonably applied clearly established Supreme Court authority. Habeas relief should be denied.

14

2.    **The State Court's Decision Relative To The Petitioner's Other Ineffective Assistance of Counsel Claims Concerning Trial Counsel's  Performance Was Neither Contrary To, Nor An Unreasonable Application of, Clearly Established Supreme Court Authority**.

The petitioner additionally claims that his trial counsel was ineffective in three other respects: (a) trial counsel failed to file a motion to sever the indictment and failed to object to the Commonwealth's motion to join the indictments; (b) trial counsel introduced evidence of the petitioner's prior uncharged drug transactions; and (c) counsel failed to deliver promised testimony on the petitioner's state of mind in support of his entrapment defense.  *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 27.  When these claims are tested under the strict AEDPA standard, habeas relief must be denied.  *See Ouber v. Guarino*, 293 F.3d at 25.   As articulated above, in its decision, the Massachusetts Appeals Court applied the performance/prejudice framework analysis mandated by *Strickland*. It is inconsequential that the Appeals Court did not explicitly mention *Strickland* where it applied the Massachusetts' enunciation of the ineffective standard derived from *Commonwealth v. Saferian*, 366 Mass. 89, 315 N.E. 878 (1974) in its analysis of the three above-mentioned claims of ineffective assistance of counsel.  As the First Circuit has affirmed, *Saferian* is the functional equivalent of *Strickland*.  *See Ouber  v. Guarino*, 293 F.3d at 44, citing *Scarpa*, 38 F.3d at 7-8.  Again, since the Appeals Court identified and articulated the substance of the *Strickland* standard, and was not presented with facts that were materially indistinguishable from those at issue in *Strickland*,  the "contrary to" portion of the analysis drops from the equation. *See Williams v. Taylor*, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from our cases to the facts of the prisoner's case would not fit comfortably

within § 2254(d)(1)'s 'contrary to' clause").   In other words, *Strickland* and its progeny do not require an outcome "contrary to" that reached by the Appeals Court in any of the three above-mentioned  ineffective assistance of counsel claims.

> a.    **The Alleged Failure to File A Motion to Sever the Indictments**.

The petitioner asserts that his trial counsel's failure to file a motion to sever the indictment or a motion to oppose the Commonwealth's motion to join rendered his assistance ineffective.  *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at  p. 27.  The Appeals Court expressly rejected this ineffective assistance of counsel claim, explaining:

> Joinder was appropriate in this case because each drug transaction was a "related offense," that is, they arose "out of a ... series of criminal episodes connected together." Mass.R.Crim.P. 9(a), 378 Mass. 859 (1979).  The amount of cocaine sold was approximately the same in each instance.  In each case, Deignan was the purchaser, the transaction was initiated by a telephone call from Deignan, and the phone call and the sale took place the same day.  The two sales took place within four months of each other. This is not a case where, for example, instances of misconduct against unrelated victims took place years apart, and there was no evidence of a pattern, a common scheme, or the like.  *See Commonwealth v. Jacobs*, 52 Mass.App.Ct. 38, 39-43, 750 N.E.2d 1028 (2001).  Moreover, given the minimal dispute as to the circumstances and personnel involved in the transactions, the balance swings clearly in favor of judicial economy, *see Commonwealth v. Helfant*, 398 Mass. 214, 231, 496 N.E.2d 433 (1986), and against severance based on prejudice to the [petitioner].  *See  Commonwealth v. Montanez*, 410 Mass. 290, 303-304, 571 N.E.2d 1372 (1991).  Finally, we note that the failure to move for severance may have been a strategic decision, designed to highlight Deignan's initiation of each transaction.  *See Commonwealth v. White*, 409 Mass. 266, 273, 565 N.E.2d 1185 (1991).  Counsel was not ineffective in this regard.

*Commonwealth v. Teti*, 60 Mass. App. Ct. at 289, 801 N.E.2d at  287-88.   Contrary to the petitioner's assertion, a review of the record demonstrates that the Appeals Court reasonably applied *Strickland*.  As Judge Burns explained in her memorandum of decision denying the petitioner's motion for new trial, calling Lobello as a hostile witness and keeping the counts

together at trial fell within the area of a trial strategy designed to show the repeated result of entrapment.[10]  *See* RSA, Exhibit 3 at R. 94.  Furthermore, Judge Burns pointed out that not seeking to sever the two claims could be an attempt to show evidence of repeated entrapment. *Id*. at R. 94-95.   Additionally, Judge Burns reasoned that given the similar circumstances of the two sales, both through Lobello to Deignan, within a period of five months and the petitioner acting as the middle-man, the denial of a motion to sever, had one been filed, would have been upheld on appeal on the basis of the admissibility for a common scheme, plan or method.  *Id*. Thus, the petitioner cannot demonstrate that the decision of the Massachusetts Appeals Court unreasonably applied *Strickland*.   Habeas relief should be denied.

> ### b.     Trial Counsel Introduced Evidence of the Petitioner's Prior Uncharged Drug Transactions.

The petitioner also claims that trial counsel erred in eliciting the testimony of both Agent Deignan and cooperating witness Leo Lobello concerning additional uncharged drug transactions between the petitioner and agent Deignan in light of the petitioner's theory of entrapment.  *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 31.   In its review of the record, the Appeals Court reasonably rejected this claim, explaining:

> The trial judge, acting on the [petitioner]'s motion for a new trial, reasoned that this evidence could have buttressed the entrapment defense by showing that Deignan created

---

[10] As Judge Burns noted, "The defense of entrapment is raised by the introduction of evidence of inducement by a government agent or one acting at his direction.  *See Commonwealth v. Koulouris*, 406 Mass. 281, 284-285 (1996); *Commonwealth v. Shuman*, 391 Mass. 351 (1984).  Mere evidence of solicitation is not enough to show inducement, but little more than solicitation is required to raise the issue.  *See Commonwealth v. Koulouris*, 406 Mass. at 284; *Commonwealth v. Shuman*, 391 Mass. at 351.  Such evidence may be that of lengthy negotiations, aggressive persuasion, coercive encouragement or repeated or persistent solicitations.  *See Commonwealth v. Jiminez*, 52 Mass. App. Ct. 1106 (2001)."   RSA, Exhibit 3 at R. 94-95 n. 3.

the [petitioner]'s predisposition to sell cocaine. The judge noted that it was defense counsel who called Lobello as a hostile witness, and elicited from him evidence (as characterized by the judge) of "repeated, persistent solicitation ... by Lobello and Deignan."

The [petitioner] counters that this evidence destroyed his entrapment defense because it portrayed the [petitioner] as a "bad person and a drug dealer." We disagree. Evidence of sales to other persons may have damaged the entrapment defense. Here, however, each sale was to Deignan. The coercion in which defense counsel sought to portray Deignan as having engaged was not minimized, and may have been heightened, by this evidence. Such may not have been the case had the evidence been of drug transactions with other persons, because were that the case, the [petitioner] would have been faced with demonstrating that different people on different occasions under different circumstances all brought about a predisposition in the [petitioner] toward criminal activity. In this case, where the evidence of guilt was powerful, and where the challenged evidence may well have helped in the defense, we cannot fairly conclude the [petitioner] was deprived of an otherwise available, substantial ground of defense.

*Commonwealth v. Teti*, 60 Mass. App. Ct. at 289-290, 801 N.E.2d at 288. Further, a review of the Appeals Court's decision demonstrates that it was an objectionably reasonable application of *Strickland*. The record supports the Appeals Court's conclusion that where the evidence of guilt was powerful, and where the challenged evidence may well have helped in the defense, the introduction of evidence relative to uncharged drug transactions did not deprive the petitioner of an otherwise available , substantial ground of defense. Judge Burns observed that trial counsel could have made a strategic decision to use the repeated sales to show that Deignan created the petitioner's predisposition to sell cocaine. *See* RSA, Exhibit 3, R. 96. Furthermore, Judge Burns explained that trial counsel's strategy is also seen in his use of Lobello as a hostile witness, for Lobello's testimony of repeated, persistent solicitations, and his testimony that the solicitations was specifically made in each instance by Lobello and Deignan. *Id.* Thus, the Massachusetts Appeals Court decision was a reasonable application of *Strickland*. Habeas relief should be denied.

18

### c.    The Alleged Failure to Call Witnesses.

The petitioner also alleges that counsel failed to deliver promised testimony on the

petitioner's state of mind in support of his entrapment defense.  *See* Petitioner's Memorandum of

Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 36.  The Appeals Court also

expressly rejected this ineffective assistance of counsel claim, reasoning as follows:

> As a preliminary matter, defense counsel never promised the testimony of experts.  Thus,
> the [petitioner]'s citation to  *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir.1988), is
> misplaced.  (FN16)[11]  What was promised was this:  "what I expect the evidence to show
> is ... that the government preyed upon this individual, this man who had psychological
> problems at the time, who was under the influence of medication, and who was using and
> abusing drugs.  He'll admit it--it was a problem he had."  This case is more akin to
> *Commonwealth v. DeCicco*, 44  Mass.App.Ct. 111, 123, 688 N.E.2d 1010 (1998), which
> distinguished *Anderson v. Butler*, *supra*, noting that the defense attorney's statement (that
> the [petitioner] might testify) "was far from a dramatic promise."
> An additional problem for the [petitioner] is that such evidence was introduced through
> the [petitioner] himself.  The [petitioner] testified to his ongoing drug dependency, and
> his depression.  While it may have been minimally helpful for defense counsel to seek to
> introduce the testimony of two of the [petitioner]'s treating psychiatrists to corroborate
> the [petitioner], it was not ineffective assistance of counsel not to do so.  *See*
> *Commonwealth v. Ortega*, 59 Mass.App.Ct. 217, 223, 794 N.E.2d 1263, further appellate
> review granted,  440 Mass. 1105, 798 N.E.2d 286 (2003) ("Ineffective assistance of
> counsel is not established simply by showing that the defendant's counsel did not call a
> witness....   The defendant  must make a showing that the purported testimony would
> have been either relevant or helpful").

*Commonwealth v. Teti*, 60 Mass. App. Ct. at 290-91, 801 N.E.2d at  289.  Despite the

petitioner's claim of ineffective assistance of counsel for failing to deliver promised testimony

on the petitioner's state of mind in support of his entrapment defense, a review of the record

---

[11] In *Anderson v. Butler*, 858 F.2d at 17, it was said, "The promise was dramatic, and the
indicated testimony strikingly significant.  The first thing that the ultimately disappointed jurors
would believe, in the absence of some other explanation, would be that the doctors were
unwilling, viz., unable, to live up to their billing.  This they would not forget."

illustrates the Appeals Court reasonably determined that defense counsel never promised the

testimony of experts. In fact, trial counsel's opening focused on the alleged unreliability and bad

character of the informant, not the petitioner's state of mind. *See* Tr. I/91-99. Furthermore, as

Judge Burns noted in the denial of the petitioner's motion for a new trial, the petitioner failed to

offer facts to demonstrate what the evidence would have been or would be at a new trial. *See*

RSA, Exhibit 3 at R. 97. "There was no affidavit to support statements about his state of mind,

no records, no notes, no opinion from a physician or psychologist, no presumptive diagnosis."

*Id.* For these reasons, the petitioner cannot demonstrate that the Massachusetts Appeals Court

unreasonably applied *Strickland*. Habeas relief should be denied.

## II. The Habeas Petition Should Be Denied Where the Massachusetts State Court's Determination That No Actual Conflict Occurred During The Petitioner's Trial Was Neither Contrary To, Nor An Unreasonable Application of, Clearly Established Supreme Court Law.

In ground two of this petition for habeas corpus, the petitioner claims that he was denied

his rights to due process and a fair trial pursuant to the Sixth and Fourteenth Amendments to the

United States Constitution where his trial attorneys had an actual conflict of interest. *See*

Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at

p. 40. In *Mickens v. Taylor,* the Supreme Court explained that the constitutional right to

effective assistance of counsel is not protected for its own sake, but rather to ensure fair trials.

*See Mickens v. Taylor*, 535 U.S. at 166. The general rule, therefore, is the familiar one

established in *Strickland v. Washington*, 466 U.S. 668, 694 (1984): a Sixth Amendment

violation is only established by a showing that, but for the unprofessional errors of counsel, the

result of the proceeding would have been different. *See Mickens* v. *Taylor*, 535 U.S. at 173. An

exception to the general rule requiring a showing of an effect on the outcome of the trial has

20

been permitted where there is an unusually high likelihood of prejudice, for instance, where assistance has been completely denied at a critical stage of the proceedings and in "circumstances of that magnitude." *Id.* at 166. As the Court pointed out, it has held that "'circumstances of that magnitude' may also arise where the defendant's attorney actively represented conflicting interests." *Id.*

While explaining the principles determining which of these "actively represented conflicting interests cases" should be excepted from the *Strickland* rule, the Supreme Court in *Mickens v. Taylor* reviewed its own precedents in detail. *Id.* at 167-174. In *Holloway v. Arkansas*, 435 U.S. 475 (1978), the Court held that it was a Sixth Amendment violation to require counsel, over a timely objection, to jointly represent codefendants with conflicting interests at trial. Because such a forced joint representation is "inherently suspect," *Mickens* indicates, prejudice is presumed. *See Mickens v. Taylor*, 535 U.S. at 168. But the automatic reversal rule in *Holloway* is essentially limited to the facts of that case, that is, it only applies "where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." *Id.* In *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980), the Supreme Court declined to extend the automatic reversal rule to conflicts that were not objected to at the time of trial. Instead, the Supreme Court established an intermediate rule: that a conflict justified relief if it "actually affected the adequacy of representation," even if petitioner was unable to make the more demanding showing of prejudice generally required by *Strickland. Id.* at 345-50. *Cuyler v. Sullivan* specifically made clear, however, that this intermediate rule does not apply unless and until the petitioner makes the threshold showing that a real, active conflict existed: "[U]ntil a defendant shows that his counsel actively represented

21

conflicting interests, he has not established the constitutional predicate for his claim of

ineffective assistance." *Cuyler v. Sullivan*,  446 U.S. at 350.

**A.    The State Court Set Forth a Reasonable Determination of the Facts.**

As articulated above**,** the recitation of the underlying facts by the Massachusetts Appeals

Court is entitled to the presumption of correctness under 28 U.S.C. §2254(e)(1).  *Dolinger v.*

*Hall,* 302 F.3d. 5, 7 n. 5 (1st Cir. 2002).   The United States Court of Appeals for the First

Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set

aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F. 3d 590, 598 (1st Cir.

2001).   The state court's findings of facts can be overcome only if the petitioner demonstrates

that they were "based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings." *Id.* at 597-598, *quoting* 28 U.S.C. § 2254(d)(2).  This

the petitioner has failed to do.   The Appeals Court detailed the facts relative to the petitioner's

legal representation as follows:

> Here, the [petitioner] has failed to establish such a conflict.  The timeline, while not
> completely determinative, establishes that Keene's activities on behalf of Lobello
> occurred approximately one year prior to trial.  We will assume that Keene was in fact
> engaged in the representation of Lobello, although there were never any conversations or
> direct contact between the two, at the time he was making telephone calls to the South
> Carolina prison at the behest of Lobello's family.   (FN9)[12]  After several of these calls
> proved fruitless, Keene apparently did nothing further, and still never spoke with
> Lobello.  His representation ended at that point.  The record reflects that Keene
> repeatedly insisted that his several telephone calls were the extent of his activities on
> Lobello's behalf, and that Lobello was represented by different counsel in his motion
> pursuant to Fed.R.Crim.P. 35.   (FN10)[13]

---

[12]  We will further assume that Keene was engaged in the representation of the
[petitioner] at trial, his apparent lack of involvement in the proceedings notwithstanding.

[13] The [petitioner] attempts to broaden Keene's representation to include work on the
motion pursuant to  Fed.R.Crim.P. 35(b).  The record does not bear that out.  "The complete

22

In these circumstances, with Keene's representation of Lobello having ended long before trial, and long before learning of Lobello's status as an informant against the [petitioner], the [petitioner] has not met his burden of establishing an actual conflict. (FN11)[14]  *See Commonwealth v. Patterson*, 432 Mass. 767, 775 n. 9, 739 N.E.2d 682 (2000), quoting from  *Commonwealth v. Martinez*, 425 Mass. at 388-389, 681 N.E.2d 818 ("When there has been some form of dual representation that would have posed a conflict, termination of the conflicting representation prior to the time of the defendant's trial will ordinarily 'obviat[e] the risk of simultaneous representation' ").  (FN12)[15]

It is true that Keene represented the [petitioner] after the [petitioner]'s arrest, prior to the [petitioner]'s hiring of McBride several months before trial.  This fact establishes that there could have been a period where Keene represented both Lobello and the [petitioner].  But this could not have given rise to a conflict, because, as the judge found, Keene was not aware of Lobello's status as an informant against the [petitioner] until one week before trial--a point by which his activities on Lobello's behalf had long since ended.  Since a conflict occurs when the " 'independent professional judgment' of trial counsel is impaired ... by the interests of another client," *Commonwealth v. Shraiar*, 397 Mass. at 20, 489 N.E.2d 689, quoting from SJC Rule 3:07, Canon 5, as appearing in 382 Mass. 779 (1981), common sense dictates that Keene's judgment could not have been impaired when he was not aware of the potentially divergent interests of his two clients. *See  Commonwealth v. Griffin*, 404 Mass. 372, 376, 535 N.E.2d 594 (1989).  *But see Commonwealth v. Geraway*, 364 Mass. 168, 175, 301 N.E.2d 814 (1973).  Moreover, there is no indication that Keene somehow gained access to privileged information through his representation of both the [petitioner] and Lobello, that was used to the [petitioner]'s detriment.  *See Commonwealth v. Soffen*, 377 Mass. 433, 437-438, 386 N.E.2d 1030 (1979) ("the constitutional guaranty is intended to prevent a defendant's attorney from being hampered by contemporaneous divided loyalties or by having acquired privileged information which inhibits him in his representation of the defendant").

---

extent of my representation of Leonard Lobello was, retrospectively, and as aforementioned, to attempt a transfer of him from a federal prison in South Carolina to a facility in or near the Commonwealth of Massachusetts.  He retained another attorney for all appellate work."

[14] The [petitioner] makes much of the judge's statements during the hearing on the issue to the effect that an actual conflict existed.  That the judge, on first impression, believed there was a conflict did not prevent her from considering the issue further, and then specifically finding, in a reasoned and reflective memorandum denying the [petitioner]'s motion for a new trial, that there was, in fact, no conflict.

[15] *See* the Appendix to the opinion for a nonexhaustive list of cases finding either conflict or its absence.

*Commonwealth v. Teti*, 60 Mass. App. Ct. at 285-86, 801 N.E.2d at 284-85.   Moreover, the

record properly supports the Appeals Court's finding  that the petitioner did not establish a

conflict.   The record reflects that attorney Keene's telephone calls on behalf of Lobello, in a

completely unrelated matter, occurred "about a year" before the petitioner's trial. (Tr. III/23).

As the trial judge noted in the denial of the petitioner's motion for a new trial, "the [petitioner]

does not substantiate his assertion that Keene simultaneously represented [the informant] and the

[petitioner].  The [petitioner] does not provide any evidence by affidavit or otherwise that Keene

was still representing the [informant] at the time of the [petitioner's] trial – or even that he was

representing the [informant] a year before trial.  Under the circumstances, Keene had no

continuing duty of loyalty to the [informant] and the [petitioner] has not shown an actual conflict

to warrant an evidentiary hearing or the grant[ing] of his motion."  See RSA Exhibit 3 at R. 91-

92.   Thus, where the petitioner has not set forth clear and convincing evidence to rebut the state

court's presumption of correctness, this Court must credit the Appeals Court's findings of fact.

*See Allison v. Ficco,* 388 F.3d 367, 370 (2004).  Habeas relief must be denied.

> **B.**    **The State Court Decision Is Not Contrary to Clearly Established**
> **Supreme Court Law**.

To be "contrary to" clearly established federal law for purposes of § 2254(d)(1), a state

court decision must announce a principle of law that is "diametrically different," "opposite in

character" or "mutually opposed" to, clearly established Supreme Court precedent, or must

arrive at a different result from a Supreme Court decision where the Supreme Court faced

"materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).  "[R]un-of-

the-mill state-court decision[s] applying the correct legal rule" to the facts of a particular case,

however, are not readily susceptible to analysis under the "contrary to" clause of the statute.  *Id*.

24

The Appeals Court decision  is not only not contrary to the Supreme Court's clearly established principles of conflict-free counsel jurisprudence, it is, by design, significantly more protective of those interests than the Sixth Amendment requires.   For example, the Massachusetts SJC read *Holloway* to require, or at least suggest, automatic reversal in cases where a genuine conflict of interest is established.  *Commonwealth v. Soffen*, 377 Mass. 433, 437, 386 N.E.2d 1030, 1033 (1979).  When the Supreme Court rejected this rule in *Sullivan*, the SJC held that the result was independently compelled by Article 12 of the Massachusetts Declaration of Rights.  *Commonwealth v. Hodge*, 386 Mass. 165, 169, 434 N.E.2d 1246, 1249 (1982).  Determining that the Declaration of Rights provided "greater safeguards than the Bill of Rights," the SJC held that once a defendant established a genuine conflict of interest, he was "required to prove neither actual prejudice nor adverse effect on his trial counsel's performance . . . ."  *Id.* at 170, 434 N.E.2d at 1249.  Moreover, even if a genuine conflict–a "constitutional predicate" to relief under the Sixth Amendment, *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)–is not shown, Massachusetts courts may still grant relief provided that petitioner demonstrates that a more tenuous or only potential conflict actually affected the adequacy of his representation and materially prejudiced him.  *Soffen*, 377 Mass. at 437, 386 N.E.2d at 1033; *Commonwealth v. Epsom*, 399 Mass. 254, 269, 503 N.E.2d 954, 960 (1987); *Commonwealth v. Shraiar*, 397 Mass. 16, 24, 489 N.E.2d 689, 695 (1986).   A state law that is explicitly more protective than federal standards is entitled to the full deference that § 2254 requires: "If there is a federal or state case that explicitly says that the state adheres to a standard that is more favorable to defendants than the federal standard (and it is correct in its characterization of the law), we will presume the federal law adjudication to be subsumed within the state law adjudication."  *McCambridge v.*

*Hall*, 303 F.3d 24, 35 (1st Cir. 2002). Thus, § 2254 deference applies, even though the Appeals

Court did not mention the less protective federal standard. *Id*.

### C.    The State Court Decision Is Not An Unreasonable Application Of The Clearly Established Federal Law.

The petitioner alleges that the Massachusetts state courts unreasonably applied the

conflict-free counsel law to the facts of his case. *See* Petitioner's Memorandum of Law in

Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 41-44. As detailed above, an

unreasonable application of the law to the facts is not one that is merely erroneous or incorrect,

but must be "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411-12 (2000). Since

the facts, as determined by the state court, did not give rise to a cognizable Sixth Amendment

claim clearly established by a holding of the United States Supreme Court, the Appeals Court's

application of the law to the facts here cannot be considered unreasonable.

The petitioner asserts that it was unreasonable for the Appeals Court to conclude that

there was no Sixth Amendment violation arising from the relationship between attorneys Keene

and McBride. *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28

U.S.C. § 2254 at p. 43. However, these facts do not establish the kind of adverse effect on

representation that the Supreme Court has required to satisfy the *Sullivan* test.

As noted above, petitioner argues that all he needs to show in order to be entitled to relief

under the Sixth Amendment is some possible division of loyalty of trial counsel that adversely

affected the performance of counsel, regardless of how remote or tenuous the supposed conflict

of interest was, or whether the lapse in performance had any effect on the outcome of the

proceeding. This is not the law clearly established by the Supreme Court, which in fact clearly

establishes that a Sixth Amendment violation only qualifies for the more lenient prejudice

standard of *Sullivan* if petitioner demonstrates that counsel actively represented competing interests and that, in the absence of such a showing, prejudice, as defined in *Strickland*, must be demonstrated. Petitioner has neither alleged nor demonstrated either that his counsel actively represented interests incompatible with his duty of loyalty to his client, or that he suffered any prejudice sufficient to undermine confidence in the fairness of the trial.

The tension between petitioner's desired application of the law and the actual federal law is effectively highlighted by petitioner's claim that the because of their joint representation and attorney Keene's conflict there is a *per se* conflict of interest requiring reversal. The Appeals Court analyzed attorney Keene's representation of the petitioner and Lobello and determined that no actual conflict existed. *See Commonwealth v. Teti*, 60 Mass. App. Ct. at 285, 801 N.E. 2d at 284. This question is relevant under the more protective state law standard, since Massachusetts treats as an actual conflict instances where counsel operates under a duty to two parties with incompatible interests and presumably requires reversal without a further showing. *Id*. at 284, 801 N.E. 2d at 284. But the question is irrelevant under the federal standard. The Appeals Court did not unreasonably apply the law in refusing to declare an actual conflict of interest for Sixth Amendment purposes. Habeas relief should be denied.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus relief should be denied.

Respectfully submitted,

THOMAS F. REILLY
Attorney General

/s/ Eva M. Badway
Eva M. Badway
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2824
Dated: May 3, 2005                 BBO # 635431