UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| JOSEPH TETI ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | Civil Action No.05-10234-RWZ |
| ) | |
| KATHLEEN M. DENNEHY ) | |
|     Respondent. ) | |
| ) | |

RESPONDENT'S OPPOSITION TO
PETITIONER'S MOTIONS TO CONDUCT DISCOVERY
AND FOR AN EVIDENTIARY HEARING

Now comes the respondent, through counsel, in the above-entitled habeas corpus action and hereby opposes the petitioner's motions requesting this Court to permit him to conduct discovery and for an evidentiary hearing. As grounds therefor, the respondent states that the petitioner has failed to establish "good cause" for this Court to exercise its discretion to order discovery. *See* Rule 6(a) of the Rules Governing § 2254 cases. Furthermore, the petitioner is not entitled to an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).

PRIOR PROCEEDINGS

A.    **State Court Proceedings**

On May 18, 1998, a Suffolk County grand jury indicted Joseph Teti ("the petitioner") for trafficking in an amount of cocaine in excess of 200 grams in violation of M.G.L. c. 94C, § 32E(b)(4). *See* Respondent's Supplemental Answer ("RSA") at Exhibit 3, R. 77. On November 12, 1998, the indictment was dismissed without prejudice to the Commonwealth. *Id.* On November 12, 1998, a Suffolk County grand jury re-indicted the petitioner on the same charge. *See* RSA at Exhibit 3, R. 1-2.

On April 9, 1999, after a jury trial in Suffolk Superior Court before Massachusetts Superior Court Associate Justice Nonnie S. Burns, the petitioner was convicted of one count of trafficking in an amount of cocaine in excess of 200 grams in violation of M.G.L. c. 94C, § 32E(b)(4).  *See* RSA at Exhibit 3, R. 6.  Judge Burns sentenced the petitioner to a state prison term of a minimum of fifteen years to a maximum of fifteen years and one day.  *Id*.  The petitioner timely noticed an appeal on May 4,1999.  *Id.* at R. 7.  On November 19, 2001, the petitioner filed a motion for a new trial pursuant to Mass. R. Crim. P. 30(b), 378 Mass. 900 (1979), that was denied by Judge Burns on August 15, 2002.  *Id*. at R. 7-8.  On September 30, 2002, the petitioner filed a motion for reconsideration of the judge's denial of his motion for new trial.  *Id*.  The judge denied the motion for reconsideration on October 9, 2002.  *Id*.  On October 28, 2002, the petitioner appealed both the denial of the Rule 30 motion and the denial of the motion for reconsideration.  *Id*.  On October 28, 2002, the Massachusetts Appeals Court consolidated the defendant's direct appeal with the appeals of the denial of his Rule 30 motion and his motion for reconsideration.  *Id*.

The petitioner raised the following claims in the Massachusetts Appeals Court: (1) the trial court erred in denying the petitioner's for a new trial without an evidentiary hearing where its findings on the motion were allegedly directly contradicted by its findings at trial relative to the existence and effect of trial counsel's ineffective assistance; and (2) the trial court's findings that petitioner's trial counsel did not violate his right to a fair trial and the effective assistance of conflict-free counsel when he failed to inform the petitioner that co-counsel Keene represented the informant against the petitioner were clearly erroneous.  *See* RSA, Exhibit 2.  On January 6, 2004, the Massachusetts Appeals Court affirmed the petitioner's conviction and the denial of his

new trial motion. *See Commonwealth v. Teti*, 60 Mass. App. Ct. 279, 801 N.E.2d 279 (2004).

On February 4, 2004, the petitioner filed an application for leave to obtain further appellate review ("ALOFAR") in the Massachusetts Supreme Judicial Court ("SJC") asserting that (1) the Appeals Court decision determining that remand was unnecessary because the attorneys involved were bound by an ethical duty to be candid and honest in answering the court's questions surrounding a conflict issue was unreasonable in light of the Board of Bar Overseers' recommendation that one of the attorneys, John McBride, be suspended from the practice of law for three years for lying to the Board; (2) the Appeals Court finding that attorney Keene represented the petitioner at trial, together with attorney McBride, while Keene also represented the informant against the petitioner, Leo Lobello, required the Appeals Court to conclude that there was an actual conflict of interest which violated the petitioner's right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article XII of the Massachusetts Declaration of Rights; (3) the Appeals Court ignored evidence demonstrating that Keene and McBride possessed Lobello's federal pre-sentence report and possessed videotapes of the petitioner and Lobello in concluding that neither Keene nor McBride was aware that Lobello was an informant on the petitioner's case until one week prior to trial; and (4) the Appeals Court finding that the petitioner received the effective assistance of counsel was clearly erroneous. *See* RSA, Exhibit 6. On March 10, 2004, the SJC denied the petitioner's ALOFAR.

### B.    The Habeas Corpus Proceedings

On February 4, 2005, the petitioner filed the underlying application for a writ of habeas corpus, along with a memorandum of law in support thereof. *See* Docket at 1 and 2. The

3

petitioner alleges that (1) his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution were violated where he was denied the effective assistance of counsel in his criminal case; and (2) he was denied his rights to due process and a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution where his trial attorneys had an actual conflict of interest. *See* Petitioner's Memorandum of Law in Support of His Petition Pursuant to 28 U.S.C. § 2254 at p. 19 and 40. On March 22, 2005, the respondent filed an answer and supplemental answer. *See* Docket at 4 and 6. On May 3, 2005, the respondent filed a memorandum of law in opposition to the petition for habeas corpus. *See* Docket at 8. On September 21, 2005, the petitioner filed a reply to the respondent's opposition to the petition for a writ of habeas corpus requesting discovery and an evidentiary hearing. *See* Docket at 11. Specifically, the petitioner seeks discovery to demonstrate that an actual conflict "adversely affected" the performance of his lawyers by causing their judgment to be "fettered." *See* Petitioner's Reply To Respondent's Opposition to the Petition for Habeas Corpus at p. 6. The respondent now files this memorandum in opposition to the petitioner's request for discovery and an evidentiary hearing.

## ARGUMENT

### I. THE PETITIONER IS NOT ENTITLED TO OBTAIN DISCOVERY WHERE HE HAS FAILED TO SATISFY THE REQUIREMENT OF DEMONSTRATING "GOOD CAUSE" FOR DISCOVERY.

In the habeas corpus forum, unlike the ordinary civil arena, a petitioner is not entitled to discovery as a matter of course. *See Bracy v. Gramley*, 520 U. S. 899, 904 (1997); *Harris v. Nelson,* 394 U. S. 286, 295 (1969). Rather, a petitioner is subject to the strict requirements set forth in Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts,

which provides:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

*See also Gilday v. Callahan*, 99 F.R.D. 308, 308-09 (D. Mass. 1983) (Alexander, M.J.) (liberal standard for discovery in Rule 26 "severely curtailed" in habeas cases).

To establish "good cause" a petitioner must come forward with "specific allegations" as to the facts, which if fully developed, would entitle the petitioner to relief. *Harris*, 394 U.S. at 300. Good cause does not exist where the petitioner through his discovery requests seeks to relitigate factual issues that have already been conclusively resolved by the state courts. *Gilday*, 99 F.R.D. at 309 (refusing to permit deposition of co-defendant who allegedly perjured himself in exchange for lenient sentence "[b]ecause the fact the petitioner seeks to dispute have already been resolved by the state court"); 28 U.S.C. § 2254(e)(1)(presumption of correctness). Nor does good cause exist where the grounds relied upon in support of the petitioner's discovery request are wholly speculative and conclusory. *See Bracy*, 520 U.S. at 908-909; *Harris*, 394 U.S. at 290, 300; *Murphy v. Johnson*, 205 F. 3d 809, 813-815 (5th Cir.) (denying petitioner's request for discovery to support a *Brady* claim where petitioner's claim based purely upon speculation), *cert. denied*, 531 U.S. 957 (2000).

Good cause within the meaning of Habeas Rule 6(a) does not exist where, as here, the state court has already found facts contrary to the discovery the petitioner seeks and the petitioner has not contradicted those findings with any specific allegations. *See Harris*, 394 U.S. at 300 (to establish "good cause" under Habeas Rule 6(a) the petitioner must come forward with "specific allegations" as to the facts, which if fully developed, would entitle petitioner to relief).

Discovery is not warranted for this petitioner who already filed a motion for a new trial in state court with the same supporting exhibits filed in the instant case, and had the opportunity to demonstrate an actual conflict. *See* RSA at Ex. 3. Now, without any further record support whatsoever, he cannot overcome the presumptively correct factual findings of the state court. *See Bracy*, 520 U. S. at 908-909 (finding "good cause" permitting discovery but emphasizing that the petitioner made detailed, specific allegations supported by extensive record evidence). The petitioner provides no support for his request for discovery. The petitioner was obligated, and had ample opportunity, to develop a factual basis for his claims in his state court proceedings, and his failure to do so does not render this Court an appropriate forum for taking discovery. Habeas petitioners seeking discovery must make specific averments, citing record evidence and establishing a *prima facie* case of a constitutional violation requiring habeas relief. *See Bracy*, 520 U. S. at 908-909; *Harris*, 394 U.S. at 290, 300; *Murphy*, 205 F. 3d at 813-815(denying petitioner's request for discovery to support a *Brady* claim where petitioner's claim based purely upon speculation). This the petitioner has not done; instead, he has merely reasserted his claims and now seeks to develop his claims from scratch. Rule 6 prohibits him from doing so. Rule 6 does not permit the petitioner to conduct a "fishing expedition." *See Murphy v. Johnson*, 205 F. 3d at 814 ("Simply put, Rule 6 does not authorize fishing expeditions."). If conclusory allegations in search of supporting facts constituted "good cause" under Rule 6, the full panoply of discovery procedures set forth in the Civil Rules would be available to any habeas petitioner, a result inimical to the plain language of Rule 6 and its historical antecedents. The motion for discovery must therefore be denied.

**II.     THE PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING.**

Pursuant to 28 U.S.C. § 2254(e)(2),

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
>    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The petitioner tried and failed to failed to develop the factual basis for establishing an actual conflict to illustrate his ineffective assistance of counsel claim in state court. As the Appeals Court explained,

> Facts underpinning the alleged conflict. At different points in time, Attorney Bradford Keene represented both Lobello and the [petitioner]. Keene came to represent Lobello first when, in or about April of 1998, (FN3)[1] Lobello's mother, Marie, paid him $2,000 to attempt to have Lobello transferred from a Federal prison in South Carolina to one closer to his family in Massachusetts. Keene never met, nor spoke, with Lobello. The sum total of his work consisted of making a few telephone calls to the prison authorities in South Carolina, who never responded to his inquiries. (FN4)[2]

---

[1] Keene told the judge he had been contacted by the Lobello family "[a]t some point about a year ago." Keene also stated of the undated receipt produced by the assistant attorney general, indicating that Keene had received $2,000 from the Lobello family, "I would say it was about a year ago." The trial of the [petitioner] took place in April, 1999.

[2] "The complete extent of my representation of Leonard Lobello was, retrospectively, and as aforementioned, to attempt a transfer of him from federal prison in South Carolina to a facility in or near the Commonwealth of Massachusetts. He retained another attorney for all appellate work"

7

Approximately one month later, in May, 1998, after the [petitioner] had been arrested, charged, and arraigned on the matter at hand, Keene was privately retained to represent him. Keene worked on the case for a relatively short period of time when, in January, 1999, he received a call from Attorney John McBride. The crux of the call was that the [petitioner] had terminated Keene and hired McBride. After sending the file to McBride's office, Keene did nothing. Although it was anticipated that Keene would withdraw his appearance as attorney for the [petitioner], (FN5)[3] he never did. (FN6)[4]

On the morning of the third day of trial, the assistant attorney general who was prosecuting the case informed the judge that she had just learned (erroneously, as it turns out) that Keene had been retained by Lobello's family to file a " Rule 35 [motion] for relief from sentencing." In fact, Keene had been retained to attempt to have Lobello transferred from a Federal prison in South Carolina to one closer to his family in Massachusetts.

Needless to say, the trial ground to a halt. The trial judge thoroughly aired the issue. Keene, perhaps indicative of the limited nature of his role, was not present in court at the time, arriving midway through the hearing. McBride repeatedly informed the judge that Keene had never told him of his relationship with Lobello and that he was shocked at the revelation. (FN7)[5]

---

[3] In a letter dated February 4, 1999, to the assistant attorney general handling the case, McBride indicated that he was the [petitioner]'s new attorney and that "Keene will be filing a withdrawal shortly." At a subsequent motion hearing held March 2, 1999, it appears Keene did not attend.

[4] The record is in conflict as to why Keene stayed on. Keene indicated that McBride, on the Friday prior to the Monday start of trial, called and asked him to " 'second seat' [McBride] at the upcoming trial"; McBride, in turn, indicated that Keene, who had never tried a case in Superior Court, asked to stay on, wishing to learn. What the parties do agree upon is that Keene did nothing other than observe. Indeed, when the case was called before the judge, the clerk indicated that the [petitioner] was "represented by Attorney John McBride"; before the venire, the clerk informed the potential jurors of the same; McBride told the jurors that "[s]itting with me at counsel table is Attorney Bradford Keene, with offices in Lynnfield, who will be with me." When Keene was dismissed from the case, midtrial, nothing was said to the jury.

[5] "Keene never told me--never, ever told me he worked for, received any money for or from Leo Lobello or his family, ever, judge. This is a total shock to me." "As an officer of the court, he never told me anything about Leo Lobello." In answer to the question, "Mr. Keene never told you that he had represented either [Lobello] or that he had ever received any money from the Lobello family," McBride responded, "Absolutely, judge." "I will go to my grave right now and tell you that Keene never told me that he had received one--that he had ever represented Lobello."

Keene, upon his late arrival, told the court that about one year prior to trial, he was asked by the Lobello family if it would be possible for Lobello to be transferred to a correctional facility closer to his family. Keene stated he made several telephone calls to a prison official at the South Carolina facility where Lobello was being held. Apparently, Keene never actually spoke with the prison official, and his messages went unanswered. According to Keene, "[t]hat [was] the extent of my relationship.... I have never spoken to Leo Lobello, I don't know the man; and that's the extent of my relationship." Keene stated that at the time of his activity on Lobello's behalf, he was representing the [petitioner]. He was, however, unaware that Lobello had been an informant against the [petitioner], as "[t]here was no disclosure to me at that point in time nor at any time during my tenure as official counsel to [the [petitioner]]." When pressed by the judge as to when he had learned of Lobello's status as an informant against the [petitioner], Keene stated it had been only "[a]bout a week" before trial. As for the failure to disclose his having represented Lobello, Keene again emphasized his limited involvement with Lobello: "the extent of my relationship with Leo Lobello was to see if I could get him moved. It had no bearing on anything but that. The family came to me.... I made several attempts to get him moved, but that was the extent of my relationship.... I have never talked to Leo Lobello, I have never met the man. That was it."

Both Keene and McBride told the judge they had not discussed any aspect of Keene's representation of Lobello. After reviewing Keene's copy of Lobello's case file, the judge decided to "take Mr. Keene at his word that he ... didn't know Mr. Lobello's name before last week."

The judge also inquired of the [petitioner], who stated that he had initially been represented by Keene, but that McBride had taken over the case several months before. The [petitioner] informed the judge that he was "quite satisfied" with McBride's representation, his connection to Keene notwithstanding. (FN8)[6]

*Commonwealth v. Teti*, 60 Mass. App. Ct. 279, 281-284, 801 N.E.2d 279, 282-284 (2004). As

---

[6] Regarding the connection between Keene and McBride, McBride labored to make clear that he "never met Brad Keene in my life or talked to him until January [the trial commencing in April], when I knew that [the [petitioner]] wanted to retain me to represent him. The only reason that Brad Keene is in the courtroom today is because he said, 'John, look, can I sit with you in this jury trial? I want to learn something.' ... But that's the extent. I said fine--you know, just sit in there and shut up, and I'll do everything, and maybe you can learn something."

such, section 2254(e)(2) applies to preclude an evidentiary hearing in this habeas forum unless petitioner can meet the exceptions. Petitioner cannot dispute that he had ample opportunity in state court to develop the facts he now wishes to pursue in an evidentiary hearing in federal court. In fact, along with the petitioner's motion for a new trial in state court, the letters included with the petitioner's reply memorandum were also presented to the Massachusetts state courts and are included in the Respondents Supplemental Answer filed on March 22, 2005. *See* RSA, Ex. 3. The petitioner already had an opportunity to develop facts to demonstrate an actual conflict and failed to do so.

The petitioner's claim does not rely upon a new rule of constitutional law made retroactive by the Supreme Court. 28 U.S.C. § 2254(e)(2)(A)(I). To the contrary, the right to the effective assistance of trial counsel has been long established. Furthermore, the petitioner cannot claim that he is relying upon a "factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Finally, the petitioner cannot demonstrate that any facts he would develop at an evidentiary hearing would be such that "no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). The petitioner's request for an evidentiary hearing must be denied.

## **CONCLUSION**

For the reasons set forth above, this Court should deny the petitioner's motions for discovery and for an evidentiary hearing.

Respectfully submitted,

THOMAS F. REILLY
Attorney General

/s/ Eva M. Badway
Eva M. Badway
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2824
BBO # 635431

Dated: September 23, 2005