UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10234-RWZ

JOSEPH TETI

v.

KATHLEEN DENNEHY

MEMORANDUM OF DECISION

August 1, 2006

ZOBEL, D.J.

In November 1998, petitioner Joseph Teti was indicted for trafficking in cocaine. Petitioner was initially represented by attorney Bradford Keene, but in January 1999, Keene received a telephone call from attorney John McBride, who informed him that petitioner had terminated Keene and hired McBride. Keene sent his files to McBride's office and did not further participate in preparing petitioner's case. However, during the trial, in the spring of 1999, Keene initially sat with McBride at counsel's table. The state's case was based on petitioner's sale of cocaine to Matthew Deignan, an undercover special agent for the Drug Enforcement Administration ("DEA"). Deignan met the petitioner through an informant named Leo Lobello. Petitioner's main defense was entrapment, in support of which theory he planned to call Lobello as a hostile witness.

On the third day of trial, the assistant attorney general prosecuting the case notified the trial judge that she believed Keene represented both petitioner and Lobello and was therefore operating under a serious conflict of interest. The trial court

immediately suspended proceedings and questioned McBride, who swore that he knew nothing about Keene's representation of Lobello. Keene arrived late and, upon questioning from the court, explained (1) that he had represented Lobello one year earlier in an attempt to get Lobello moved to another correctional facility;[1] (2) that the extent of his representation was making a few phone calls to the South Carolina prison where Lobello was being held, which went unanswered; (3) that he had never met or spoken with Lobello, and that he had done nothing further after making the phone calls; (4) that he had not known until one week before petitioner's trial began that Lobello was an informant against the defendant; and (5) that he had failed to disclose his previous representation of Lobello, even after learning of Lobello's involvement in petitioner's case, because of Keene's own limited participation in petitioner's trial. Keene denied that he had shared any information about Lobello with McBride.

The trial judge initially concluded that Keene had an actual conflict of interest and required him to withdraw. The judge further raised the possibility that the conflict might have infected the entire trial. Nevertheless, she allowed the trial to continue, and on April 9, 1999, petitioner was convicted of cocaine trafficking in violation of M.G.L. c. 94C, § 32E(b)(4). The petitioner moved for a new trial, and upon denial of the motion, moved for reconsideration. In denying these motions, the trial judge concluded that, although "on first impression" she believed there was a conflict, upon further

---

[1]Apparently, the prosecutor mistakenly believed that Keene represented Lobello on a Fed. R. Crim. P. 35(b) motion, pursuant to which Lobello sought to have his federal sentence reduced in exchange for cooperating against other defendants, such as petitioner. In fact, the state courts later verified that Keene's representation of Lobello was limited to the attempted transfer.

2

consideration, she found that "there was, in fact, no conflict." Commonwealth v. Teti, 60 Mass. App. Ct. 279, 296 n.11 (2004). The petitioner also timely filed a notice of appeal, which was consolidated with his appeals from the denials of his new trial motion and motion for reconsideration. Before the Massachusetts Appeals Court, the petitioner argued (1) that the trial court had erred in denying his motion for a new trial without an evidentiary hearing, since the court's findings on the motion with respect to trial counsel's ineffective assistance and alleged conflict directly contradicted certain findings it had made at trial; and (2) that the trial court had clearly erred when it concluded that petitioner's Sixth Amendment rights were not violated by McBride's failure to inform petitioner of Keene's conflict of interest. The appeals court affirmed his conviction. See Teti, 60 Mass. App. Ct. 279. His application to the Supreme Judicial Court for leave to obtain further appellate review was denied.

In his habeas petition, petitioner contends (1) that his Sixth Amendment right to a fair trial and his Fourteenth Amendment due process right were violated because his trial attorneys had an actual conflict of interest; and (2) that he received ineffective assistance of counsel.

I.  Adjudication on the Merits and AEDPA Deference

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court adjudicating a habeas petition may grant relief only if the state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

the light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). In this case, the question is whether the state court unreasonably applied federal law.[2] The standard is objective, and an erroneous or incorrect application of federal law is not necessarily unreasonable. See McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). "[I]f it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." Id. This deferential standard of review, however, applies only to claims that were "adjudicated on the merits in state court proceedings." Id. § 2254(d). Where no such adjudication occurred, federal courts review habeas claims de novo. See Gruning v. DiPaolo, 311 F.3d 69, 71 (1st Cir. 2002). Petitioner contends that de novo review is appropriate in this case.

To the extent that petitioner relies upon the state court's failure to cite federal case law (Pet.'s Reply Mem. 2), he is incorrect. It is clear that a state-court decision that does not cite federal law may nevertheless be an adjudication on the merits. Early v. Packer, 537 U.S. 3, 8 (2002). Indeed, state courts need not even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Id.; see also Ellsworth v. Warden, 333 F.3d 1, 4 n.1 (1st Cir. 2003). And where the state court cites state case law that is more protective of a petitioner's rights than federal law, the federal law adjudication is "subsumed" within the state law adjudication, which accordingly is treated as an "adjudication on the merits"

---

[2]The other prong of § 2254(d)(1) applies only where the state court employs a rule that contradicts governing law set forth in Supreme Court cases, see Williams v. Taylor, 529 U.S. 362, 405 (2000), and is thus inapplicable in this case, and petitioner does not contend that § 2254(d)(2) applies, as discussed further below.

4

for purposes of § 2254(d).  See Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2002) (internal quotation marks omitted).  I therefore consider each habeas claim to determine whether it was adjudicated on the merits, and I conclude that, with one exception, each claim falls within § 2254(d).

First, the court considered petitioner's arguments with respect to Keene and determined that no actual conflict existed, and that even if a potential conflict existed, no prejudice resulted.  Teti, 60 Mass. App. Ct. at 286-88.  It applied Massachusetts case law concerning conflict of interest, but because Massachusetts provides "greater safeguards than the Bill of Rights," Allison v. Ficco, 284 F. Supp. 2d 182, 190 (D. Mass. 2003) (internal quotation marks omitted), I "presume the federal law adjudication to be subsumed within the state law adjudication," McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir. 2002).  Accordingly, to the extent that petitioner claims that Keene had an actual conflict of interest, the state court adjudicated the claim on the merits for purposes of 28 U.S.C. § 2254(d).

To the extent that petitioner asserts ineffective assistance based on other aspects of counsel's representation—i.e., counsel's failure to file a motion to sever, the introduction of petitioner's uncharged drug transactions, and failure to present medical testimony on petitioner's state of mind—the Massachusetts Appeals Court similarly considered and rejected those claims.  Teti, 60 Mass. App. Ct. at 287-291.  Again, though it did not cite Strickland v. Washington, 466 U.S. 668 (1984), it did apply the standard set forth in Commonwealth v. Saferian, 366 Mass. 89 (1974), which is at least as favorable to defendants.  See, e.g., Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994).

5

Indeed, petitioner himself noted in his state appellate brief that Saferian and Strickland are essentially equivalent. (Resp.'s Supp. Answer ("RSA"), Ex. 3 at 32 n.4). These claims are therefore also reviewed deferentially under § 2254(d).

The one exception is McBride's alleged conflict of interest. This claim was not addressed by the state court, which analyzed only (1) whether Keene had an actual conflict of interest, Teti, 60 Mass. App. Ct. at 284-86; (2) whether Keene had a potential conflict of interest, id. at 286-87; and (3) whether McBride was ineffective in failing to advise petitioner of Keene's alleged conflict, id. at 287-88. Review of petitioner's state appellate papers indicates that the issue of McBride's alleged conflict was presented to the state court,[3] and respondent has not argued otherwise. Because that claim "was raised before the state court but was left unresolved," it must be reviewed de novo. Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006) (internal quotation marks omitted).

Accordingly, I review all of petitioner's claims under the standard set forth in § 2254(d), except petitioner's claim that McBride suffered from a conflict of interest, which I review de novo.

II.   Factual Determinations

In concluding that petitioner's trial counsel had no conflict of interest, the state courts made a number of factual findings. Teti, 60 Mass. App. Ct. at 280-84. (RSA, Ex. 3, R88-90). Essential to the Appeals Court's analysis was its recitation of the facts,

---

[3]In his appellate brief, petitioner argues (1) that Keene's conflict "[a]ffected" McBride (RSA, Ex. 2, at 19); (2) that McBride as co-counsel was required under state ethical rules to withdraw because of Keene's conflict (id. at 28); and (3) that McBride and Keene had a "joint conflict" (id. at 30).

which stated: (1) that Keene had not represented Lobello on his Rule 35(b) motion, Teti, 60 Mass. App. Ct. at 282, 285 & n.10; (2) that Keene's representation of Lobello was limited to a few, unanswered phone calls to a South Carolina prison facility one year before petitioner's trial, but that Keene had never spoken to or met Lobello, id. at 285 & n.10; (3) that Keene was not aware that Lobello was the informant in petitioner's case until one week before trial—"a point by which his activities on Lobello's behalf had long since ended," id. at 286; (4) that Keene did not participate in the preparation of petitioner's case and that his "involvement with the trial was essentially nonexistent," id. at 287; and (5) that "McBride found out about Keene's representation [of Lobello] only on the third day of trial," id. at 288. Petitioner disagrees with these findings, arguing that: (1) Keene simultaneously represented petitioner and Lobello; (2) McBride learned of Keene's representation of Lobello before trial; and (3) that Keene shared information about Lobello with McBride. Thus, although the instant petition is primarily a challenge to the state courts' legal analysis, it is to some extent a challenge to their factual findings as well.

Under AEDPA, a federal court sitting in habeas must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). "For this purpose, 'facts' are defined as 'basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators.'" Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001). The petitioner bears the burden of rebutting this presumption "by clear and convincing evidence," 28 U.S.C. § 2254(e)(1), and the presumption applies to factual determinations by both appellate and trial-level state courts, Rashad v. Welsh,

7

300 F.3d 27, 34 (1st Cir. 2002).  Petitioner apparently does not seek to rebut the presumption of correctness that attaches to the state courts' factual findings, since he nowhere argues that he has the "clear and convincing evidence" necessary to satisfy § 2254(e)(1).  Instead, petitioner contends (1) that the factual record was not adequately developed before the state courts; (2) that "conflicts in the evidence require additional fact-finding" by this court (Pet.'s Reply Mem. 3); and (3) that discovery (pursuant to Rule 6(a) of the Rules Governing § 2254 cases) and an evidentiary hearing (pursuant to 28 U.S.C. § 2254(e)(2)) are therefore required.

"A discrete set of [procedural] Rules governs federal habeas proceedings launched by state prisoners."  Mayle v. Felix, 125 S. Ct. 2562, 2569 (2005).  Under Rule 6 of the Rules Governing Section 2254 Cases ("Habeas Rule 6"), the liberal discovery standards that usually apply to civil cases in federal court are "severely curtailed."  Gilday v. Callahan, 99 F.R.D. 308 (D. Mass. 1983).  Habeas Rule 6 allows discovery in § 2254 proceedings only upon a showing of "good cause."  Good cause exists where the petitioner has made "specific allegations" that give the court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."  Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).  For three reasons, petitioner's request is denied.  First, petitioner has not set forth "any proposed interrogatories and requests for admissions," nor has he specified "any requested documents," as required by Habeas Rule 6(b).  It is thus unclear precisely what information he seeks to recover or from what parties.  Second, the factual disputes petitioner raises—and most of the documents he submits in support of his

arguments—have already been considered and rejected by the state court. See Gilday v. Callahan, 99 F.R.D. 308, 309 (D. Mass. 1983) (denying discovery request where petitioner sought to dispute facts "already . . . resolved by the state court").

Third, even when considered independently, the documents submitted by petitioner in support of his request do not suggest that discovery would yield facts that, "if . . . fully developed," would "demonstrate that he is entitled to relief." For example, in a letter to petitioner's current attorney, dated August 9, 1999, Keene states that "[t]he issue of the confidential informant, Leo Lobello, was something which we [Keene and McBride] discussed in detail" prior to trial. (Pet.'s Reply Mem., Ex. A). This statement does not, however, contradict the state courts' findings that McBride and Keene never discussed the fact of Keene's representation of Lobello prior to trial. Teti, 60 Mass. App. Ct. at 288. (RSA, Ex. 3, at R89). Indeed, Keene's letter is consistent with the state courts' determination that Keene learned that Lobello was the government informant approximately one week before trial. Teti, 60 Mass. App. Ct. at 283-84. Moreover, to the extent that Keene's letter is inconsistent with other evidence in the record—such as his own sworn statement in an affidavit, in which he averred that it was only "[a]t trial" that he learned Lobello was a witness for the prosecution (RSA, Ex. 3, at R68)—that inconsistency concerns only the time at which Keene learned that Lobello was the informant and thus does not suggest that Keene represented Lobello and petitioner simultaneously, or that he shared information about Lobello with McBride. Indeed, Keene's letter goes on to assert that "[t]he judge had an independent attorney interview Mr. Lobello, (twice) and it was determined that I had engaged in no conflict."

(Pet.'s Reply Mem., Ex. A). Such statements do not give reason to believe that petitioner could develop facts that would refute the state court's determination that no conflict existed.

Petitioner also submits a letter from McBride to Keene, dated September 22, 1999, in which McBride disputes Keene's assertion that he had previously told McBride about his representation of Lobello. (Id., Ex. B, at 2). At most, McBride's letter suggests that Keene may have revealed his earlier association with Lobello to McBride before the trial. But this fact alone—which McBride vociferously denies—would not alter the conflict analysis, since McBride's letter gives no indication that Keene simultaneously represented petitioner and Lobello, that Keene shared any information about Lobello with McBride, or that McBride and Keene altered their representation of petitioner in some way because of Keene's association with Lobello. Finally, petitioner contends that McBride must have received information about Lobello from Keene based upon a letter that McBride sent to the state prosecutor in February 1999, which allegedly "incorporates information beyond what McBride could have garnered from Lobello's PSR." (Pet.'s Reply Mem. 4 and Ex. C). Petitioner's suggestion that McBride could not have obtained this information from anyone except Keene is nothing more than speculation. See Bracy, 520 U.S. at 909 (discovery not warranted for theories that are "too speculative").[4] Petitioner's request for discovery lacks "good cause" and is therefore denied.

---

[4]Petitioner also cites "the affidavit of Jason Teti, [petitioner's] b[r]other" in support of his assertion that Keene shared information about Lobello with McBride. No such affidavit was submitted to the court.

10

As for petitioner's request for an evidentiary hearing, it is governed by 28 U.S.C. § 2254(e)(2), which allows such hearings, inter alia, if (1) "the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence"; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Under this standard, petitioner's request must be denied. The facts petitioner seeks to prove are not facts "that could not have been previously discovered through the exercise of due diligence." In fact, as respondent points out, the letters submitted by petitioner in support of his request for an evidentiary hearing were presented to and considered by the Massachusetts Appeals Court. The letters submitted, moreover, fail to support petitioner's factual assertions and thus give no indication that an evidentiary hearing would give rise to "clear and convincing evidence" that petitioner's trial counsel suffered from a conflict of interest. The request for an evidentiary hearing is denied.

III.    Conflict of Interest

The core of petitioner's claim is an alleged conflict of interest. According to petitioner, both Keene and McBride were his attorneys, and both suffered from an actual conflict of interest. Petitioner contends that this conflict deprived him of his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process and that automatic reversal is required. I assume, as did the state appellate court, that both Keene and McBride represented petitioner at trial. Teti, 60 Mass. App. Ct. at 285 n.9. But see id. at 282 n.6 (Keene did "nothing other than observe").

The Sixth Amendment guarantees "the assistance of counsel" to criminal defendants. The right exists "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." United States v. Cronic, 466 U.S. 648, 658 (1984). The right to counsel includes "a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). And the right to conflict-free counsel also inheres in the Fourteenth Amendment's Due Process Clause. See id. at 271-72 (noting that petitioners' due process rights may have been violated where counsel "may not have pursued their interests single-mindedly"). Under the familiar standard set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), a defendant alleging ineffective assistance of counsel must, as a general matter, demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Some exceptions exist; thus, "where assistance of counsel has been denied entirely or during a critical stage of the proceeding," the defendant need not show prejudice. Mickens v. Taylor, 535 U.S. 162, 166 (2002). Until recently, federal courts generally applied a rule of automatic reversal, without requiring a showing of prejudice, in cases where an actual conflict of interest existed. Petitioner argues that this standard still applies. (Pet.'s Mem. 21). In Mickens, however, the Supreme Court explained that, for Sixth Amendment purposes, "an actual conflict of interest" is "a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." Id. at 171 (internal quotation marks and emphasis omitted). In other words, an actual conflict, by definition, is a conflict that has "actually affected the adequacy of [counsel's] representation." Id. (emphasis

12

omitted). Where a conflict exists, but that conflict "did not affect counsel's performance," the Sixth Amendment does not require automatic reversal. Id. at 172.[5]

### A. Attorney Keene

The Massachusetts Appeals Court concluded that no actual conflict existed, and that even if a conflict existed, no prejudice resulted. Teti, 60 Mass. App. Ct. at 285-87. It explained that (1) even if "there could have been a period whe[n] Keene represented both Lobello and [petitioner]. . . ., Keene was not aware of Lobello's status as an informant against [petitioner] until one week before trial—a point by which his activities on Lobello's behalf had long since ended"; and (2) in any event, "there is no indication that Keene somehow gained access to privileged information through his representation of both [petitioner] and Lobello, that was used to [petitioner's] detriment." Id. at 286. In so holding, the state court did not unreasonably apply federal law. Under the analysis traditionally applied in the First Circuit, an actual conflict exists where "(1) the attorney could have pursued a plausible alternative defense strategy, and (2) the alternative strategy was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." Bucuvalas v. United States, 98 F.3d 652, 656 (1st Cir. 1996). Or, as the Supreme Court has explained, an actual conflict exists only where the conflict "actually affected the adequacy of [counsel's] representation."

---

[5]The appellate court analyzed petitioner's claim under state law, which mandates reversal in cases of actual conflict without requiring any showing of prejudice. See Teti, 60 Mass. App. Ct. at 284. Under state law, an actual conflict exists where the "independent professional judgment of trial counsel is impaired" by his own interests or those of another client. Commonwealth v. Shraiar, 397 Mass. 16, 20 (1986).

13

Mickens, 535 U.S. at 171. In light of these principles, petitioner is unable to establish an actual conflict.

First, petitioner has failed to specify what "alternative defense strategy" Keene might have adopted at trial. Even assuming he were able to identify such a strategy, it could not have been "inherently in conflict" with Keene's representation of Lobello, which was limited to the transfer attempt. Nor could Keene plausibly have decided to forego any such strategy due to his loyalty to Lobello, since he did not know until shortly before trial that Lobello was the informant against petitioner at which time he no longer represented Lobello. Given this factual predicate, Keene's alleged duty to Lobello could not have "actually affected the adequacy" of his representation of petitioner, and the state court's finding of no conflict was therefore entirely reasonable. Nor was it unreasonable for the Massachusetts Appeals Court to conclude that there was no prejudice to petitioner in any event. It did so based on its determination that Keene's involvement in the trial and in preparation of the case was less than minimal, that Keene and McBride had never discussed Keene's previous representation of Lobello, and that Keene's representation of Lobello was limited to an effort to transfer him to another prison. In these circumstances, there is no "reasonable probability that, but for [Keene's alleged conflict], the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Accordingly, it was not unreasonable for the state court to find no prejudice.

    B.    Attorney McBride

14

This claim is reviewed de novo, but the state court's factual determinations are still entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). See DiBenedetto v. Hall, 272 F.3d 1, 7 n.1 (1st Cir. 2001) (whether or not state court adjudicated claim on the merits, § 2254(e)(1) deference to factual findings still applies). The state courts concluded (1) that McBride did not know that Keene had previously represented Lobello until the third day of petitioner's trial; (2) that Keene did not share any information about Lobello with McBride; and (3) that Keene did not participate in the preparation of petitioner's case and, by and large, merely observed the trial. In such circumstances, McBride did not "actively represent" both Lobello and Keene. Indeed, McBride's alleged conflict is, under petitioner's theory, derivative of Keene's alleged conflict, which I have already concluded did not exist. For similar reasons, petitioner cannot establish prejudice. Accordingly, petitioner has failed to demonstrate a conflict of interest on McBride's part giving rise to a Sixth or Fourteenth Amendment violation that would entitle him to relief.

IV.     Ineffective Assistance

The Massachusetts Appeals Court considered and rejected each of the ineffective assistance claims raised in the instant habeas petition. Reviewing these claims under § 2254(d), I conclude that the state court reasonably applied federal law in each instance.

Petitioner first contends that counsel was ineffective in failing to file a motion to sever the two indictments relating to the two charged drug transactions. Petitioner is unable to show entitlement to relief under either prong of Strickland. First, petitioner's

principal defense was entrapment, in support of which he "indicated that he was called and contacted repeatedly by [the DEA agent], who pressured him to sell cocaine." Given this defense strategy, counsel's decision not to sever the two indictments fell well within the "wide range of reasonable professional assistance" that is acceptable under Strickland. 466 U.S. at 689. Counsel may well have wanted the jury to know about both transactions "to highlight [the agent's] initiation of each transaction." Teti, 60 Mass. App. Ct. at 289. (See also RSA, Ex. 3, at 94 (trial judge noting that "keeping the counts together at trial fell within the area of a trial strategy designed to show the repeated result of entrapment")). Second, joinder was appropriate in this case under the relevant state procedural rules, and under these rules, any motion to sever would have been denied and the denial upheld on appeal. See Teti, 60 Mass. App. Ct. at 289. (RSA, Ex. 3, at 95). Prejudice thus cannot be established. Accordingly, the state court did not unreasonably apply federal law in concluding that counsel's failure to file a motion to sever did not constitute ineffective assistance under the Sixth Amendment.

Petitioner also contends that counsel improperly introduced evidence of his uncharged drug transactions. The state court concluded that such evidence—which concerned only sales by the petitioner to the government agent—may have been introduced in support of petitioner's entrapment defense and thus "may well have helped in the defense." Teti, 60 Mass. App. Ct. at 290. The introduction of this evidence falls within the realm of "tactical or strategic decisions" to which courts grant considerable deference; such "tactical judgments" must be "manifestly unreasonable" to trigger a Strickland violation. Castillo v. Matesanz, 348 F.3d 1, 13 (1st Cir. 2003).

While evidence of petitioner's drug transactions with other persons might well have raised more concern, it was not unreasonable for the state court to conclude that evidence of repeated drug transactions with an undercover government agent "may have . . . heightened" the coercion "which defense counsel sought to portray." Teti, 60 Mass. App. Ct. at 290. Accordingly, petitioner cannot establish entitlement to habeas relief on this claim.

Finally, petitioner contends that counsel was ineffective in failing to deliver "powerful and promised testimony" concerning petitioner's state of mind. (Pet.'s Mem. 36). The record shows, however, that counsel stated in his opening that he would show "that the government preyed upon this individual, this man who had psychological problems at the time, who was under the influence of medication, and who was using and abusing drugs," and that evidence of these facts was introduced when petitioner took the stand and "testified to his ongoing drug dependency, and his depression." Teti, 60 Mass. App. Ct. at 290-91. Petitioner contends that counsel promised to deliver expert testimony and never did, thereby severely impairing his defense. But the record reveals that counsel never promised expert testimony. Id. at 291. The case upon which petitioner relies, Anderson v. Butler, 858 F.2d 16 (1st Cir. 1988), is therefore inapposite. Because counsel did introduce evidence of petitioner's state of mind and because counsel never promised to introduce expert testimony, it was not unreasonable for the state court to conclude that counsel's failure to introduce expert testimony did not constitute ineffective assistance.

V.   Conclusion

17

The petition for writ of habeas corpus is denied.


_August 1, 2006_____         /s/Rya W. Zobel
         DATE                RYA W. ZOBEL
                             UNITED STATES DISTRICT JUDGE